IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GONZALEZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br><br><br><br>BAM TRADING SERVICES, INC., d/b/a BINANCE US, a Delaware corporation; BINANCE HOLDINGS, LTD, d/b/a BINANCE, a foreign company; CHANGPENG ZHAO; JOHN DOES 1-100 (fictitious names); XYZ CORP, INC. 1-100 (fictitious names),<br><br>                    Defendants. | CVIL CASE NO.:<br><br>        *Civil Action* |

MEMORANDUM OF LAW

Robert A. Tandy, Esq.(RT0387)
Law Office of Robert A. Tandy, LLC
50 Tice Boulevard, Suite 250
Woodcliff Lake, NJ 07677
Phone: (201) 474-7103
Fax: (201) 474-7101
Email: rtandy@tandylaw.com
Co-Counsel for Plaintiff,
David Gonzalez

Eric J. Warner, Esq. (EW3946)
LAW OFFICE OF ERIC J. WARNER, LLC
991 US Highway 22, Suite 200
Bridgewater, NJ 08807
Phone: (201) 403-5937
Fax: (877) 360-0508
Email: eric@ejwlawfirm.com
Co-Counsel for Plaintiff,
David Gonzalez

Of Counsel  & on the Brief,
Robert A. Tandy, Esq. & Eric J. Warner, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . .3

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . .6

I.      PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION. . . . . . . . . . . . . . . . . 6

II.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS. . . . .10

A.      CONVERSION AND AIDING AND ABETTING CONVERSION . . . .11

B.      UNJUST ENRICHMENT . . . . . . . . . . . . . . . . .14

C.      FRAUD AND RICO VIOLATIONS . . . . . . . . . . . . .16

III.   PLAINTIFF WILL SUFFER IRREPARABLE HARM AND HAVE NO ADEQUATE REMEDY AT LAW ABSENT THE REQUESTED RELIEF. . . . . .18

IV.     THE BALANCE OF HARMS FAVORS THE PLAINTIFF. . . . . . 24

V.      THE PUBLIC INTEREST IS SERVED BY THE REQUESTED RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . .26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acierno v. New Castle Cty.*,
        40 F.3d 645 (3d Cir. 1994). . . . . . . . . . . . . . 19

*ADP, LLC v. Rafferty*,
        923 F.3d 113 (3d Cir. 2019). . . . . . . . . . . . . . 7

*Amalgamated Transit Union Local 85 v. Port Auth. Of Allegheny Cty.*,
        39 F.4th 95 (3d Cir. 2022) . . . . . . . . . . . . . 6

*Anderson v. Ayling*,
        396 F.3d 265 (3d Cir. 2005). . . . . . . . . . . . . 16

i

*Andrews v. Holloway*,
　　95-cv-1047, 1995 U.S. Dist. LEXIS 22121 (D.N.J. Nov. 9,
　　1995). . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*Apollo Techs. Corp. v. Centrosphere Indus. Corp.*,
　　805 F. Supp. 1157 (D.N.J. 1992). . . . . . . . . . . . . 20

*AT&T v. Winback & Conserve Program*,
　　42 F.3d 1421 (3d Cir. 1994). . . . . . . . . . . . . . 25

*Borough of W. Caldwell v. Borough of Caldwell*,
　　138 A.2d 402 (N.J. 1958) . . . . . . . . . . . . . . .14

*Boyle v. United States*,
　　129 S.Ct. 2237 (2009). . . . . . . . . . . . . . . . 17

*Chicago Title Ins. Co. v. Ellis*,
　　409 N.J. Super. 444 (App. Div. 2009). . . . . . . 13, 14

*Ciser v. Nestle Waters North Am., Inc.*,
　　No. 13-4509, 2015 U.S. App. LEXIS 195
　　(3d Cir. Jan. 7, 2015). . . . . . . . . . . . . . . .15

*County of Essex v. First Union Nat. Bank*,
　　373 N.J. Super. 543 (App. Div. 2004), *aff'd, remanded*
　　*by* 186 N.J. 46 (2006). . . . . . . . . . . . . 14, 15

*Deckert v. Independence Shares Corp.*,
　　311 U.S. 282 (1940). . . . . . . . . . . . . . . . 8, 9

*Dougherty v. Drew Univ.*,
　　534 F. Supp. 3d 363 (D.N.J. 2021). . . . . . . . . . 11

*Driscoll v. Burlington-Bristol Bridge Co.*,
　　8 N.J. 433, *cert. denied*, 344 U.S. 838 (1952). . . . .15

*ECRI v. McGraw-Hill, Inc.*,
　　809 F.2d 223 (3d Cir. 1987). . . . . . . . . . . . .19

*Elliot v. Kiesewetter*,
　　98 F.3d 47 (3d Cir. 1996). . . . . . . . . . . . . .21

*Failla v. City of Passaic*,
　　146 F.3d 149 (3d Cir. 1998). . . . . . . . . . . .11, 12

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
　　765 F.3d 205 (3d Cir. 2014). . . . . . . . . . . . .6

*Franklin Med. Assocs. v. Newark Pub. Schs.*,
     362 N.J. Super. 494 (App. Div.2003) . . . . . . . . . .12

*FTC v. Nat'l Invention Servs.*,
     97-cv-3459, 1997 U.S. Dist. LEXIS 16777
     (E.D. Pa. Oct. 19, 2004) . . . . . . . . . . . . . . . 25

*Genty v. Resol Tr. Corp.*,
     937 F.2d 899 (3d Cir. 1991) . . . . . . . . . . . . . .16

*Goldsmith v. Camden Cnty. Surrogate's Office*,
     975 A.2d 459 (App. Div. 2009) . . . . . . . . . . . .15

*Greater Phila. Chamber of Commerce v. City of Phila.*,
     949 F.3d 116 (3d Cir. 2020) . . . . . . . . . . . 7, 24

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
     527 U.S. 308 (1999) . . . . . . . . . . . . . . . . . 8

*Hirsch v. Phily*,
     4 N.J. 408 (1950) . . . . . . . . . . . . . . . . . 13

*Hoxworth v. Blinder, Robinson & Co.*,
     903 F.2d 186 (3d Cir. 1990) . . . . . . . . . 20, 21, 23

*In re Insurance Brokerage Antitrust Litig.*,
     618 F.3d 300 (3d Cir. 2010) . . . . . . . . . . . 16, 17

*In re Revel AC, Inc.*,
     802 F.3d 558 (3d Cir. 2015) . . . . . . . . . . . . . 10

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
     882 F.2d 797 (3d Cir. 1989) . . . . . . . 18, 19, 22, 23

*Judson v. Peoples Bank Trust & Co.*,
     25 N.J. 17 (1957) . . . . . . . . . . . . . . . . . 11

*Key Corporate Capital, Inc. v. Tilley*,
     216 Fed. App'x 193 (3d Cir. 2007) . . . . . . . . . . 13

*Kleinman v. Wright*,
     2018 WL 6812914 (S.D. Fla. Dec. 27, 2018) . . . . . .13

*Laidlaw, Inc. v. Student Transp. of Am.*,
     20 F. Supp. 2d 727 (D.N.J. 1998) . . . . . . . . . 19

*Louis v. Bledsoe*,
     438 F. App'x 129 (3d Cir. 2011). . . . . . . . . . . 19

*Manning Eng'g, Inc. v Hudson County Park Comm'n*,
     74 N.J. 113 (1977). . . . . . . . . . . . . . . . . 15

*Maldonado v. Houstoun*,
     157 F.3d 179 (3d Cir. 1998). . . . . . . . . . . . 6

*Marsellis-Warner Corp. v. Rabens*,
     51 F. Supp.2d 508 (D.N.J. 1999). . . . . . . . . . 7

*Meisels v. Fox Rothschild LLP*,
     240 N.J. 286 (2020). . . . . . . . . . . . . . . . 11

*Mendelsohn, Drucker, & Assocs., P.C. v. Titan Atlas Mfg.*,
     12-cv-0453, 2013 U.S. Dist. LEXIS 8844
     (E.D. Pa. Jan. 22, 2013). . . . . . . . . . . . . .20

*Morton v. Beyer*,
     822 F.2d 363 (3d Cir. 1987). . . . . . . . . . 19, 23

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
Consumer Pharms. Co.*,
     290 F.3d 578 (3d Cir. 2002). . . . . . . . . . . . 6

*Nutrasweet Co. v. Vit-Mar Enters.*,
     176 F.3d 151 (3d Cir. 1999). . . . . . . . . . . . .6

*Opticians Ass'n of Am. v. Independent Opticians of Am.*,
     920 F.2d 187 (3d Cir. 1990) . . . . . . .19, 21, 25, 26

*Ox Labs Inc. v. BitPay, Inc.*,
     848 F. App'x 795 (9th Cir. 2021). . . . . . . . . .22

*Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*,
     143 F.3d 800 (3d Cir. 1998)...........................24

*Pullum v. Greene*,
     396 F.2d 251 (5th Cir. 1968)...........................10

*Punnett v. Carter*,
     621 F.2d 578 (3d Cir. 1980)...........................10

*Reilly v. City of Harrisburg*,
     858 F.3d 173 (3d Cir. 2017)..................6, 10, 24

*S & R Corp. v. Jiffy Lube Intern., Inc.*,
    968 F.2d 371 (3d Cir. 1992)...........................25

*SEC v. First City Financial Corp., Ltd.*,
    587 F.2d 1149 (D.C. Cir. 1978).......................10

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479(1985)...................................9

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc.*,
    387 N.J. Super. 469, 904 A.2d 775 (App. Div. 2006).....12

*Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*,
    716 F.2d 220 (3d Cir. 1983)..........................15

*United Steel-workers of Am. v. Fort Pitt Steel Casting*,
    598 F.2d 1273 (3d Cir. 1979).....................19, 23

*U.S. v. First Nat'l City Bank*,
    379 U.S. 378 (1965)...............................8, 9

*VRG Corp. v. GKN Realty Corp.*,
    135 N.J. 539 (1994)..................................14

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)..............................18, 22

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)....................................6

*Zaftr Inc. v. Lawrence*,
    No. CV 21-2177, 2021 WL 4989769
    E.D. Pa. Oct. 72, 2021).. . . . . . . . . . . . . . . .12

**Statutes and Other Authorities**

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 . . . . .  . . . . . . . . . . . . . 9, 16, 17

U.S. Off. of Gov't Ethics, LA-22-05, Financial Disclosure Reporting Considerations for Collectible Non-Fungible Tokens and Fractionalized Non-Fungible Tokens (July 15, 2022). . . . . . 13

Exec. Order No. 14,067, § (9)(c), 87 Fed. Reg. 14,143 (Mar. 14, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . .13

Fed. R. Civ. P. 65(b). . . . . . . . . . . . . . . . .7, 8

New Jersey Local Civil Rule 65.1 . . . . . . . . . . . . . . 7

## PRELIMINARY STATEMENT

Plaintiff, David Gonzalez ("Plaintiff"), is compelled to bring this action on an emergent basis to prevent and enjoin Defendants, BAM Trading Services, Inc. d/b/a Binance US("BAM" or "Binance.US"); Binance Holdings LTD d/b/a/ Binance ("Binance"); Changpeng Zhao ("CZ"); and an unknown "Hacker" identified as XYZ Corp., Inc. (1-100) and John Does (1-100) who owns, maintains and operates a digital cryptocurrency account identified as "0x95f0d3169e8734f300a91Bce591f543F246485Fa" ("Alleged Hacker Account"), as well as those partes who conspired to engage in a common scheme to enable cryptocurrency hackers, from transferring, trading, selling, or otherwise moving any and all assets, coins, monies, or other cryptocurrency from the Alleged Hacker Account.

By way of background, cryptocurrency is a form of digital money. Unlike government-issued money, cryptocurrency is a medium of exchange that is digital, encrypted, and decentralized. There is no central authority that manages and maintains the value of a cryptocurrency. Instead, transactions are verified and maintained through a peer-to-peer network called a blockchain. Cryptocurrency tokens are sent between users electronically by sharing public addresses of wallets on a block chain. These digital addresses are represented by a string of numbers and letters and can be loosely though of like a bank account. Unlike

1

traditional bank accounts, however, all transactions to and from a given wallet can be viewed on the public block chain.

This case involves the dissipation of millions of dollars of assets that rightfully belong to Plaintiff. Plaintiff hereby submits this memorandum of law in support of his motion for a preliminary injunction, freezing the digital assets held in the Alleged Hacker Account at Binance with the following address: "0x95f0d3169e8734f300a91Bce591f543F246485Fa." Specifically, Plaintiff seeks an Order prohibiting the transfer of assets from the Alleged Hacker Account, and directing Binance to "block" the assets contained therein and transfer the assets contained therein to Plaintiff's account.

Without a freezing and transfer order, Defendants could transfer and deplete the Plaintiff's assets even more and continue to foster and promote the criminal acts of theft, cyber-attacks, money laundering, fraud, and conspiracy to commit unlawful acts.

The requirements for a preliminary injunction and a temporary restraining order freezing the Alleged Hacker Account are satisfied in this matter.

First, Plaintiff has a reasonable probability of prevailing on his claims. On or about May 8, 2021, Plaintiff discovered that his Account was hacked and approximately 41,881,332,772 units of Shiba Inu (SHIB), 90,934,964,476,560.50 units of Hokkaidu Inu (HOKK), 6,677,846,866,673.65 units of Kishu Inu (KISHU),

1,985,208,578.34 units of Akita Inu (AKITA), 1,382,788,310,243.34 units of FEG Token (FEG), 53,436.64 units of Hydro (HYDRO), 123.3706939 units of Paid Network, 578.2658609 units of DigiCol Token, and other cryptocurrencies respectively, were improperly and unlawfully transferred out of Plaintiff's account to another account bearing an account number 0x95f0d3169e8734f300a91Bce591f543F246485Fa.

Second, Plaintiff will suffer irreparable harm if Defendants are not restrained. Without a restraining order, any transfer of illegally gotten assets may become untraceable, meaning Plaintiff would lose his assets forever.

Third, the injunction will not inflict further harm on the Defendants because Plaintiff is entitled to his assets that were unlawfully stolen from him in May 2021 and there is no harm arising from the maintenance of the status quo in freezing the assets in order for the owner/representative of the Alleged Hacker Account to come forward and answer for his/her/its actions.

Finally, the relief sought is in the public's interest to prevent fraud, theft, cyber-attacks, money laundering, and conspiracy to commit unlawful acts.

## STATEMENT OF FACTS

On or about May 3, 2021, Plaintiff contacted Coinbase customer service to advise of a problem with his Account bearing digital address 0x0E6eC53Eb9742b98a865571bd25e3c6daA4c8Dac ("Dac").

3

(Compl. ¶¶ 2, 76.) Specifically, Plaintiff could not access his account to withdraw money. (Compl. ¶ 77.) Plaintiff was assigned a Coinbase Specialist who was investigating his account problem. (Compl. ¶ 78.)

On or about May 8, 2021, Plaintiff was finally able to access his account, but was unable to trade because the Coinbase platform warned of a "lack of liquidity," when the screen showed that Plaintiff possessed more than ample liquidity to trade. (Compl. ¶ 79.)

To Plaintiff's astonishment, following Coinbase's assignment of a specialist to address Plaintiff's problem, Plaintiff discovered that his Coinbase "Dac" Account was hacked and approximately 41,881,332,772 units of Shiba Inu (SHIB), 90,934,964,476,560.50 units of Hokkaidu Inu (HOKK), 6,677,846,866,673.65 units of Kishu Inu (KISHU), 1,985,208,578.34 units of Akita Inu (AKITA), 1,382,788,310,243.34 units of FEG Token (FEG), 53,436.64 units of Hydro (HYDRO), 123.3706939 units of Paid Network, 578.2658609 units of DigiCol Token, and other cryptocurrencies respectively, were improperly and unlawfully transferred out of Plaintiff's account to another account bearing an account number 0x95f0d3169e8734f300a91Bce591f543F246485Fa. (Compl. ¶¶ 2, 80.)

The 41,881,332,772 units of Shiba Inu (SHIB), 90,934,964,476,560.50 units of Hokkaidu Inu (HOKK),

4

6,677,846,866,673.65 units of Kishu Inu (KISHU), 1,985,208,578.34 units of Akita Inu (AKITA), 1,382,788,310,243.34 units of FEG Token (FEG), 53,436.64 units of Hydro (HYDRO), 123.3706939 units of Paid Network, 578.2658609 units of DigiCol Token, and other cryptocurrencies, stolen from Plaintiff were traced and discovered to be deposited into Binance addresses. (Compl. ¶ 81.)

All the transfers of Plaintiff's cryptocurrency portfolio to Binance were within Binance's 2 BTC limit under which no form of identification was required to deposit cryptocurrency. (Compl. ¶ 82.) The public nature of block chain is why Plaintiff was able to determine, following a thorough investigation tracing the block chain, that a hacker had deposited his crypto currency with Defendants. (Compl. ¶ 83; *see also* Ex. A to Compl.)  Plaintiff has demanded that Defendants return his cryptocurrency to no avail as Binance has refused to turn over the assets contained within the Alleged Hacker Account to Plaintiff. (Compl. ¶ 84.)

Upon information and belief, between May 8, 2021 and the date of this filing, the total value of the cryptocurrencies portfolio stolen from Plaintiff fluctuated, but is believed to have been valued, at the portfolio's high at approximately $30,000,000.00. (Compl. ¶ 85.)

**LEGAL ARGUMENT**

**I.    PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

This Court should grant the temporary restraining order and preliminary injunction if the following is demonstrated: "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998) (affirming grant of injunctive relief); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted; *Amalgamated Transit Union Local 85 v. Port Auth. Of Allegheny Cty.*, 39 F.4th 95, 102-03 (3d Cir. 2022). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

The first two factors are the "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (citation omitted). Only after the moving party makes a threshold showing that these

6

two factors are met will the district court determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (citation omitted); *see also ADP, LLC v. Rafferty*, 923 F.3d 113, 120 (3d Cir. 2019).

Additionally, an asset freeze order may take the form of a preliminary injunction and temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure. *See, e.g. Marsellis-Warner Corp. v. Rabens*, 51 F.Supp.2d 508 (D.N.J. 1999). In light of the cyber-attack, theft and unlawful transfer of Plaintiff's assets, there is ample basis for granting Plaintiff's requested relief. District of New Jersey Local Civil Rule 65.1 states that "no order to show cause to bring on a matter for hearing will be granted except on a clear and specific showing by affidavit or verified pleading of good and sufficient reasons why a procedure other than by notice of motion is necessary." L. Civ. R. 65.1. Under the rule, an order to show cause may include temporary restraints "only under the conditions set forth in Fed. R. Civ. P. 65(b)." *Id.* Federal Rule of Civil Procedure 65(b) provides that a temporary restraining order may be issued without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party

can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice should not be required." Fed. R. Civ. P. 65(b).

This Court also has equitable power to uphold injunction based on Plaintiff's Statutory and common law claims. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court addressed the narrow question of "whether, in an action for money *damages*, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets *in which no lien or equitable interest is claimed*." *Id.* at 310 (emphasis added). The holding was limited to actions for money *damages* and issuing preliminary injunction with regard to the *unrelated assets*. It is plainly inapplicable to the case at bar. In holding that courts lack authority to grant an asset freeze in that limited circumstance, the Supreme Court explicitly distinguished two earlier decision authorizing prejudgment asset restraints, *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), and *U.S. v. First Nat'l City Bank*, 379 U.S. 378 (1965). *Grupo Mexicano*, 527 U.S. at 324-26. The Court distinguished *Deckert* on the grounds that the plaintiff stated a claim for equitable relief and, in *First National*, the court derived its power from a federal statute (the tax code) rather than its general equitable powers. Id. at 325-26. Accordingly, courts have authority to restrain a

defendant's assets: (1) where the plaintiff asserts an equitable claim (*Deckert*, 311 U.S. 282); and (2) where a statute provides the court with equitable powers (*First Nat'l*, 379 U.S. 378). Both circumstances are present here.

In this case, (1) the funds that Plaintiff seeks to freeze drive from an alleged theft, cyber-attacks, fraud, and money laundering and are directly tied to the merits of the case; (2) Plaintiff asserts equitable claims in his Amended Complaint including claims for restitution, imposition of constructive trust, accounting and disgorgement; (3) Plaintiff asserts statutory claims, which provide for equitable remedies.

The RICO statute permits the Court to prevent and to restrain future violations, 18 USCS § 1964 provides:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter [18 USCS § 1962] by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

*Id.*; *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (1985) (explaining that RICO is to be read broadly and liberally construed to effectuate its remedial purposes). Numerous

courts have held that evidence of past violations may establish the requisite reasonable likelihood of future violations in view of the totality of the circumstances, particularly where the defendant's past violations were: (1) "part of a pattern" and not isolated; (2) were "deliberate" and not "merely technical in nature"; and (3) "the defendant's business will present opportunities to violate the law in the future. *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1228-29 (D.C. Cir. 1989); *CFTC v. Hunt*, 591 F.2d 1211, 1220-21 (7th Cir. 1979); *SEC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1168 (D.C. Cir. 1978); *Pullum v. Greene*, 396 F.2d 251, 256-57 (5th Cir. 1968). This is exactly the situation here. Absent injunction in place, nothing will Defendants from continuing to perpetrate fraudulent schemes that foster theft, cyber-attacks and money laundering activities.

## II. PLAINTIFF IS LIKELY TO SUCCED ON THE MERITS.

Parties seeking injunctive relief must show "a reasonable chance, or probability of winning." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citation omitted). A reasonable chance is "not necessarily more likely than not." *Reilly*, 858 F.3d at 179, *see also id.* at 179 n.3. But, if plaintiffs carry their burden of establishing a *prima facie* case, they demonstrate a reasonable chance, or probability, of winning to satisfy the first requisite showing. *See Punnett v. Carter*, 621 F.2d 578, 588 (3d Cir. 1980) (observing that moving parties need not place their right to

receive a preliminary injunction beyond all doubt).

**A. Conversion and Aiding and Abetting Conversion**

Plaintiff has adequately pleaded claims for conversion and aiding and abetting conversion. Plaintiff owned the stolen cryptocurrency at the time of the theft (Complaint ¶¶ 78-79). Defendants knowingly allowed the laundered cryptocurrency to be deposited in Binance accounts, thus converting Plaintiff's property (Complaint ¶¶ 79-81). Additionally, Defendants aided and abetted the conversion by failing to implement adequate Know Your Customer (KYC) and Anti-Money Laundering (AML) protocols (Complaint ¶¶ 52-73).

"[C]onversion is the intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that chattel." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 379-80 (D.N.J. 2021) (quoting *Meisels v. Fox Rothschild LLP*, 240 N.J. 286 (2020)). The standard for civil aiding and abetting liability that has been adopted by the Third Circuit and New Jersey courts is the one set forth in the Restatement of Torts. *See Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998); *Judson v. Peoples Bank Trust & Co.*, 25 N.J. 17, 134 (1957). Section 876(b) "provides that a person is liable for harm resulting to a third person from the conduct of another when he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other

11

so to conduct himself . . . .'" *Failla*, 146 F.3d at 158 (quoting the Restatement (Second) of Torts § 876(b)). Comment (c) to this section states that "it is essential that the conduct of the actor be in itself tortious. One who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc.*, 387 N.J. Super. 469, 904 A.2d 775, 783 (App. Div. 2006) (*quoting* the Restatement (Second) of Torts § 876 (b comment c)). Thus, "an aider and abettor must willfully and knowingly associate himself with another's unlawful act." *Failla*, 146 F.3d at 158 (internal quotations omitted). For example, a "person who bribes an agent of a principal has 'aided and abetted' the agent in the breach of the agent's fiduciary duty of loyalty to the principal." *Qwest Communications*, 904 A.2d at 782 (*citing Franklin Med. Assocs. v. Newark Pub. Schs.*, 362 N.J. Super. 494 (App. Div.2003)).

Here, Plaintiff has sufficiently pleaded that he owned the cryptocurrency at the time of the theft and that Defendants, by allowing the stolen funds to be laundered through their platform, exercised unauthorized control over Plaintiff's property. Few courts have considered whether cryptocurrency is "chattel" for the purposes of a conversion claim. *Zaftr Inc. v. Lawrence*, No. CV 21-2177, 2021 WL 4989769, at *5 (E.D. Pa. Oct. 72, 2021). The Biden

Administration and the U.S. Office of Government Ethics have defined cryptocurrency as "a digital asset, which may be a medium of exchange, for which generation or ownership records are supported through a distributed ledger technology that relies on cryptography, such as a blockchain." *See* U.S. Off. of Gov't Ethics, LA-22-05, Financial Disclosure Reporting Considerations for Collectible Non-Fungible Tokens and Fractionalized Non-Fungible Tokens, n.4 (July 15, 2022) (citing Exec. Order No. 14,067, § (9)(c), 87 Fed. Reg. 14,143 (Mar. 14, 2022)).

Even if it is impossible to grant specific recovery of Plaintiff's cryptocurrency, Plaintiff would be entitled to receive the monetary proceeds from the unlawful sales of his cryptocurrency. While the tort of conversion developed historically with respect to chattels, in New Jersey it has also been applied to money. *See*, *e.g.*, *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 454 (App. Div. 2009) (citing *Hirsch v. Phily*, 4 N.J. 408, 416 (1950)). Other courts have held that cryptocurrency is money for purposes of a conversion claim. *See Kleinman v. Wright*, 2018 WL 6812914, at *15 (S.D. Fla. Dec. 27, 2018) (*holding* that under Florida law, Bitcoin was money for the purposes of a conversion claim). Where a sum of money is identifiable, courts look to the relative rights of each party to possession and use of the money to determine whether a cause of action lies for conversion. *See Key Corporate Capital, Inc. v. Tilley*, 216 Fed.

App'x 193, 195-96 (3d Cir. 2007) (recognizing the viability of conversion claims involving the failure to transmit funds). In New Jersey, the "crux of conversion is wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *Ellis*, 409 N.J. Super. at 456 (*citing* New Jersey cases). Therefore, Plaintiff's claims for conversion and aiding and abetting conversion are likely to succeed on the merits.

### B. Unjust Enrichment

Plaintiff also adequately pleaded a claim for unjust enrichment. Defendants unjustly enriched themselves by collecting transaction fees on the stolen cryptocurrency (Complaint ¶ 102). Plaintiff conferred a benefit upon Defendants, which they unjustly retained (Complaint ¶¶ 103-105). "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'" *County of Essex v. First Union Nat. Bank*, 373 N.J. Super. 543, 549-50 (App. Div. 2004) (*quoting VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 554 (1994)), *aff'd, remanded by* 186 N.J. 46 (2006). Unjust enrichment is a quasi-contractual remedy that is imposed "for reasons of justice," to prevent "unconscionable benefit or advantage." *Borough of W. Caldwell v. Borough of Caldwell*, 138 A.2d 402, 412 (N.J. 1958) (internal quotation marks omitted). "A cause of action for unjust enrichment requires proof

that defendants received a benefit and that retention of that benefit without paying would be unjust." *Ciser v. Nestle Waters North Am., Inc.*, No. 13-4509, 2015 U.S. App. LEXIS 195, at *7-8 (3d Cir. Jan. 7, 2015) (quoting *Goldsmith v. Camden Cnty. Surrogate's Office*, 975 A.2d 459, 462 (N.J. Super. Ct. 2009)). A claim of unjust enrichment will not stand when "an express contract exists concerning the identical subject matter*." Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983).

Defendants unjustly enriched themselves by collecting transaction fees arising from the trades of cryptocurrency that was stolen from Plaintiff and laundered through Binance accounts. Courts have recognized that a claim for unjust enrichment may arise outside the usual quasi-contractual setting. *County of Essex*, 373 N.J. Super. at 550. For example, when corrupt means have been employed to obtain a governmental contract, the concept of unjust enrichment has been used to deny the wrongdoer any profit from the transaction and to thereby deter such conduct. *See Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, *cert. denied*, 344 U.S. 838 (1952); *Manning Eng'g, Inc. v Hudson County Park Comm'n*, 74 N.J. 113 (1977).

Plaintiff has adequately pleaded that Defendants were enriched by collecting transaction fees on the stolen cryptocurrency and that it would be inequitable for Defendants to

retain those fees. Therefore, Plaintiff's claim for unjust enrichment is likely to succeed on the merits.

### C. Fraud and RICO Violations

Plaintiff also adequately pleaded that Defendants engaged in a fraudulent scheme, common course of conduct and conspiracy to gain market share and generate revenues by enabling bad actors to launder stolen cryptocurrency through Defendants' platform in violation of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. RICO prohibits a person, who is part of an enterprise that affects interstate commerce, from participating in the enterprise's affairs through a pattern of racketeering activity. *Genty v. Resol Tr. Corp.*, 937 F.2d 899, 906 (3d Cir. 1991) (citing 18 U.S.C. § 1962(c)). Civil RICO suits may be "brought by any person injured 'in his business or property' by a RICO violation." *Id.* at 906 (quoting 18 U.S.C. § 1964(c)). To establish standing, a plaintiff must demonstrate that the alleged RICO violation is both a but for and proximate cause of his injury. *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005). To recover under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (internal quotations and citations omitted).

Plaintiff has adequately pleaded conduct - that Binance's profits are derived from transaction fees, including trades in

which stolen cryptocurrency is exchanged for other cryptocurrency or fiat currency, and thus Defendants allow as many transactions on its platform as possible, even those occurring from stolen cryptocurrency resulting from intentionally nonexistent or inadequate KYC and AML protocols (Complaint ¶¶ 52-73).

Plaintiff has pleaded facts implying the existence of an enterprise with "a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 369-70 (quoting *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009)). Plaintiff has pleaded that Defendants BAM and Binance are alter egos controlled entirely by Defendant CZ "to draw the scrutiny of U.S. regulators away from the global exchange" (Complaint ¶¶ 19-20). Plaintiff pleaded that Defendants solicited customers in the United States and New Jersey and promote the use of a VPN for U.S. Citizens to unlawfully use Binance (Complaint ¶¶ 40-51). Plaintiff has pleaded that Binance, under control of CZ and in concert with its alter ego, BAM, turned a blind eye to laundering on its platform and had "shockingly nonexistent" KYC and AML protocols to prevent the theft of cryptocurrency (Complaint ¶¶ 55-56, 64).

Plaintiff has adequately pleaded a "pattern of racketeering activity," which requires at least two or more predicate acts within a ten-year time span. 18 U.S.C. § 1961(5). Plaintiff has

pleaded that Defendants allowed the trade of Plaintiff's stolen cryptocurrency, which happened repeatedly in a short timeframe and caused the prices to spike, and receive transaction fees from such trades, despite being alerted by Plaintiff that the cryptocurrency was stolen; as such, Plaintiff has adequately pleaded that Defendants are engaged in "criminal conduct of a continuing nature" each and every time Defendants permit the trade of Plaintiff's stolen cryptocurrency and earn transaction fees from each and every trade (Complaint ¶¶ 74-82).

Plaintiff has adequately pleaded all of the elements of a civil RICO claim, and therefore, Plaintiff's RICO claim is likely to succeed on the merits.

### III. PLAINTIFF WILL SUFFER IRREPARABLE INJURY AND HAVE NO ADEQUATE REMEDY AT LAW ABSENT THE REQUESTED RELIEF.

A plaintiff "must make an affirmative showing indicating that it will be irreparably harmed should relief be denied." *Andrews v. Holloway*, 95-cv-1047, 1995 U.S. Dist. LEXIS 22121, at *29 (D.N.J. Nov. 9, 1995) (granting injunctive relief). In order to demonstrate irreparable injury, the moving party "must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312

(1982)). A movant has the burden of establishing a "clear showing of immediate irreparable injury," *Louis v. Bledsoe*, 438 F. App'x 129, 131 (3d Cir. 2011) (citation omitted), and "[e]stablishing a risk of irreparable harm is not enough," *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). "[T]he injury created by a failure to issue the requested injunction must be of a peculiar nature, so that compensation in money cannot atone for it." *Acierno v. New Castle Cty.*, 40 F.3d 645. 653 (3d Cir. 1994) (citation omitted); *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (*citing Morton v. Beyer*, 822 F.2d 363, 372 (3d Cir. 1987)). "[T]he claimed injury cannot merely be possible, speculative, or remote." *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) (citation omitted).

In this Circuit, "[a] plaintiff may prevail upon a request for preliminary injunctive relief where the underlying wrong is compensable by damages where the preliminary injunction is necessary to preserve the future damages judgment." *Andrews,* 1995 U.S. Dist. LEXIS 22121, at *29.; *see also Instant Air*, 882 F.2d at 802 (recognizing that a preliminary injunction is appropriate when it is likely that an award could not be collected). The "fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury." *United Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979) (affirming

19

injunction). Rather, "the probable future unsatisfiability of a likely money judgment can constitute irreparable harm." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205-206 (3d Cir. 1990) (affirming injunction). Similarly, the Third Circuit "has long recognized that a preliminary injunction is appropriate when a plaintiff's injury is compensable by monetary damages but the amount of those damages is difficult to prove with reasonable certainty." *See Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1210 (D.N.J. 1992) (*citing* numerous Third Circuit opinions supporting this position)

In *Hoxworth*, the Third Circuit considered a nonmovant's claim that a district court lacked the power to protect a potential future damages remedy through a preliminary injunction preventing the dissipation of assets. *Id.* The Third Circuit rejected this contention, finding instead that the movants could make a showing of irreparable harm where funds would be unavailable to satisfy a judgment. *Id.* Indeed, district courts within the Third Circuit have considered past deceptive behavior when assessing the likelihood that a money judgment will be satisfied. *See, e.g. Mendelsohn, Drucker, & Assocs., P.C. v. Titan Atlas Mfg.*, 12-cv-0453, 2013 U.S. Dist. LEXIS 8844, at *10 (E.D. Pa. Jan. 22, 2013); *Andrews*, 1995 U.S. Dist. LEXIS 22121, at *16.

Additionally, the Third Circuit has expanded the principles it set forth in *Hoxworth* within the context of a freeze on specific assets, reasoning:

> That irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order. Thus, consistent with *Hoxworth*, we hold that a court may find that a party seeking an asset freeze to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation.
>
> The fact that the assets subject to the Freeze Order are primarily money assets does not preclude entry of a freeze order enjoining the use of those assets.

*Elliot v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996).

Plaintiff has adequately pleaded that he will suffer irreparable harm if the Court does not grant this relief. Grounds for irreparable harm include loss of trade, loss of goodwill, loss of control of reputation, and the possibility of confusion. *Opticians*, 920 F.2d at 195-96. Plaintiff adequately pleaded that he was unable to trade on his account because of a "lack of liquidity" even though Plaintiff possessed more than ample liquidity to trade (Complaint ¶¶ 74-77). Plaintiff pleaded that

the value of his account fluctuated to a high of $30,000,000.00 during the time period of May 3-8, 2021, when his account was hacked, and the hackers used his stolen cryptocurrency to artificially spike the price of the cryptocurrency and sell at the peak. (Complaint ¶ 81). Although few courts have had the opportunity to value cryptocurrency to determine the amount of damages in a conversion action, the Ninth Circuit has held that the cryptocurrency should be given the value at the time the defendant sold it. *Ox Labs Inc. v. BitPay, Inc.*, 848 F. App'x 795, 796 (9th Cir. 2021). Unlike the defendant in *Ox Labs*, which was innocent because it received the plaintiff's Bitcoins due to plaintiff's own mistake, the Defendants are not innocent here in that they allowed Plaintiff's account to be hacked and benefited from the trading fees associated with the hackers' trades and could be liable for the value at the peak of the hackers' manipulation.

In order to demonstrate irreparable injury, the moving party "must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added) (*citing Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Due to the volatility of cryptocurrency, Plaintiff's losses may be difficult to ascertain, and compensation in money alone may not account for all

22

of Plaintiff's losses. In certain limited circumstances, the Third Circuit has recognized that a preliminary injunction is appropriate even though the plaintiff's injury is compensable by money damages. *Hoxworth*, 903 F.2d at 205-06; *Instant Air*, 882 F.2d at 801-02; *Morton*, 822 F.2d at 371 (3d Cir. 1987); *United Steel-workers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979). The following circumstances are significant: (1) the difficulty of proving damages with reasonable certainty, (2) the difficulty of procuring a suitable substitute performance by means of money awarded as damages and (3) the likelihood that an award could not be collected. *Instant Air*, 882 F.2d at 802 (*citing* Restatement (Second) of Contracts § 360)). In *Instant Air*, in seeking a preliminary injunction, the plaintiff argued that (1) its business would be completely destroyed, (2) it would be required to lay off most, if not all of its seventy employees and (3) its goodwill and business reputation would be destroyed. *Id.* at 801. In short, the plaintiff argued it would "lose everything it has built over the past two decades." *Id.* Similarly, Plaintiff stands to lose everything he has built through Defendants' platform, and his livelihood will be completely destroyed. Respectfully, this Court should grant injunctive relief to Plaintiff to stop any further dissipation of Plaintiff's cryptocurrency or the proceeds thereof until they can be restored to his account.

23

## IV. THE BALANCE OF HARMS FAVORS THE PLAINTIFF.

Plaintiff has demonstrated the first two factors – a likelihood of success on the merits, and the risk of irreparable harm, which are the "most critical." *Reilly*, 858 F.3d at 179. Only after the moving party makes a threshold showing that these two factors are met will the district court determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *See*, *e.g.*, *Greater Phila. Chamber of Commerce*, 949 F.3d at 133.

The injunction will not inflict further harm on the Defendants because Plaintiff is entitled to his assets that were unlawfully stolen from him in May 2021 and there is no harm arising from the maintenance of the status quo in freezing the assets in order for the owner/representative of the Alleged Hacker Account to come forward and answer for his/her/its actions. Any alleged harm to Defendants by the injunctive relief – which is negligible - is significantly outweighed by the immeasurable damage done to Plaintiff through the laundering of his cryptocurrency account. The self-inflicted nature of any harm suffered by Defendants due to their failure to stop the theft and laundering of Plaintiff's cryptocurrency weighs in favor of granting preliminary injunctive relief. *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998). The Third Circuit has held "that a party's self-inflicted harm by choosing to stop its own performance

under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damages done [to the other party]." *Id.* (citing *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 379 (3d Cir. 1992) and *Opticians*, 920 F.2d at 197).

**V. THE PUBLIC INTEREST IS SERVED BY THE REQUESTED RELIEF.**

Finally, the public interest is undoubtedly served by the injunctive relief Plaintiff seeks, given Defendants' deception and the otherwise unjust enrichment and promotion of criminal activities that would occur absent such relief. *See, e.g. FTC v. Nat'l Invention Servs.*, 97-cv-3459, 1997 U.S. Dist. LEXIS 16777, at *12 (D.N.J. Aug. 12, 1997); *Allstate Ins. Co. v. Davidson Med. Group*, 01-cv-5938, 2004 U.S. Dist. LEXIS 20987, at *8 (E.D. Pa. Oct. 19, 2004). "[A]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Plaintiff's demonstration above, that Plaintiff was a victim of fraud, theft, cyber-attacks, and money laundering, also furthers the fact that his requested request is in the public interest. "Public interest can be defined in a number of ways [such as] the right of the public not to be deceived or confused." *Opticians*, 920 F.2d at 197. For these reasons, the public interest would not

be harmed, but rather served, if the Court orders the relief Plaintiff requests.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to grant its application for emergent injunctive relief to terminate Defendant's ongoing fraud.

Dated: August 16, 2024

Respectfully submitted,


/s/ Robert A. Tandy

Robert A. Tandy, Esq.(RT0387)
Law Office of Robert A. Tandy, LLC
50 Tice Boulevard, Suite 250
Woodcliff Lake, NJ 07677
Phone: (201) 474-7103
Fax: (201) 474-7103
Email: rtandy@tandylaw.com
Co-Counsel for Plaintiff, David
Gonzalez


/s/ Eric J. Warner

Eric J. Warner, Esq. (EW3946)
LAW OFFICE OF ERIC J. WARNER, LLC
991 US Highway 22, Suite 200
Bridgewater, NJ 08807
Phone: (201) 403-5937
Fax: (877) 360-0508
Email: eric@ejwlawfirm.com
Co-Counsel for Plaintiff, David
Gonzalez