# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAVID GONZALEZ,

                    Plaintiff,

       —*against*—

BAM TRADING SERVICES, INC., d/b/a
BINANCE US, a Delaware corporation;

BINANCE HOLDINGS, LTD., d/b/a BINANCE, a
foreign company;

CHANGPENG ZHAO;

JOHN DOES 1-100 (fictitious names); and

XYZ CORP, INC. 1-100 (fictitious names),

                    Defendants.

Case No. 2:24-cv-08521-BRM-CLW

## OPPOSITION OF BINANCE HOLDINGS, LTD. AND CHANGPENG ZHAO TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Attorneys for Defendant Binance Holdings Ltd.*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant Changpeng Zhao*

September 13, 2024

## TABLE OF CONTENTS

**Page**

**Introduction** ...........................................................................................................................1

**Background** ............................................................................................................................2

I.    Plaintiff's Allegations ...................................................................................................2

II.   Procedural Background.................................................................................................3

**Argument** ...............................................................................................................................4

I.    Plaintiff Fails to Clear the Threshold Hurdle of Establishing Personal Jurisdiction Over Mr. Zhao or BHL ........................................................................................................4

    A.    Plaintiff Fails To Establish Personal Jurisdiction .......................................................5

    B.    Service Upon Mr. Zhao and BHL Was Improper.........................................................9

    C.    Unsupported Alter Ego Allegations Cannot Resuscitate Plaintiff's Deficient Service Upon BHL ........................................................................................................10

II.   Plaintiff Fails to Show That He Is Likely to Suffer Irreparable Harm ..............................13

III.  Plaintiff Fails to Show He Is Likely to Succeed on Any of His Claims...........................16

    A.    Plaintiff Is Not Likely to Succeed on His RICO Claims...........................................16

        1.    Plaintiff Has Not Met RICO's Causation Requirement..............................16

        2.    The Complaint Fails to Allege a Distinct "Enterprise" .............................20

    B.    Plaintiff Is Not Likely to Succeed on His Conversion Claims ...............................21

    C.    Plaintiff Is Not Likely to Succeed on His Unjust Enrichment Claims ..................23

IV.   An Injunction Risks Private Harm and Is Not in the Public Interest ................................24

**Conclusion**..............................................................................................................................26

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................. 16

*Argabright v. Rheem Manufacturing Co.*,
    258 F. Supp. 3d 470 (D.N.J. 2017) ..................................................................... 18

*Beacon Sales Acquisition, Inc. v. Board of Trustees*,
    425 F. Supp. 3d 377 (D.N.J. 2019) ....................................................................... 4

*Bennington Foods LLC v. St. Croix Renaissance Group*,
    *LLP*, 528 F.3d 176 (3d Cir. 2008) ........................................................................ 4

*Brittingham v. Mobil Corp.*,
    943 F.2d 297 (3d Cir. 1991) ............................................................................... 16

*Cafaro v. HMC International, LLC*,
    No. 07-CV-2793, 2009 WL 1622825 (D.N.J. June 10, 2009) ........................... 18

*Cargill Glob. Trading v. Applied Development Co.*,
    706 F. Supp. 2d 563 (D.N.J. 2010) ..................................................................... 17

*Carteret Savings Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992 ................................................................................... 5

*Clemente v. Doe*,
    No. 24-CV-314, 2024 WL 384713 (D.N.J. Feb. 1, 2024) ................................. 12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ........................................................................................ 5, 6

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008) ....................................................................... 9

*Dietz v. National City Mortgage Co.*,
    No. 1:08-CV-1058, 2008 WL 2857722 (M.D. Pa. July 21, 2008) ....................... 7

*Digital Wholesale of New York, LLC v. American Eagle Trading Group, LLC*,
    No. 16-CV-3487, 2016 WL 5660462 (D.N.J. Sept. 29, 2016) ........................... 17

*Eli Lilly & Co. v. Roussel Corp.*,
    23 F. Supp. 2d 460 (D.N.J. 1998) ....................................................................... 18

*Elliott v. Kiesewetter*,
    98 F.3d 47 (3d Cir. 1996) ...................................................................................13

*Ferring Pharms., Inc. v. Watson Pharmaceuticals, Inc.*,
    765 F.3d 205 (3d Cir. 2014) ...................................................................................4

*Fischer v. Federal Express Corp.*,
    42 F.4th 366 (3d Cir. 2022) ...................................................................................7

*Flair International Corp. v. Heisler*,
    173 F.3d 844, 1999 WL 132181(2d Cir. 1999)......................................................14

*Golden Fortune Import & Export Corp. v. Mei-Xin Ltd.*,
    Nos. 22-1710 & 22-1885, 2022 WL 3536494 (3d Cir. Aug. 5, 2022) ..............11

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) ............................................................................... 13, 15, 16

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
    903 F.2d 186 (3d Cir. 1990) .................................................................................12

*In re Blockfi, Inc.*,
    No. 22-19361, 2023 WL 5597165 (Bankr. D.N.J. Aug. 29, 2023)......................17

*In re Diet Drugs Products Liability Litigation*,
    282 F.3d 220 (3d Cir. 2002) ...................................................................................4

*In re Mallinckrodt PLC*,
    638 B.R. 57 (Bankr. D. Del. 2021) ......................................................................13

*Jackson v. Murphy*,
    No. 23-CV-23183, 2024 WL 111025 (D.N.J. Jan. 10, 2024) ............................11

*Knopick v. UBS Financial Services, Inc.*,
    121 F. Supp. 3d 444 (E.D. Pa. 2015) ..................................................................15

*Laurel Gardens, LLC v. Mckenna*,
    948 F.3d 105 (3d Cir. 2020) ...................................................................................7

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) .....................................................................................5

*New Earthshell Corp. v. Lycos Internet Ltd.*,
    No. 14-CV-7665, 2015 WL 170564 (D.N.J. Jan. 12, 2015) .................................4

*New Jersey Performing Arts Center Corp. v. ZMAN Time Productions, Inc.*,
    No. 17-CV-2901, 2018 WL 814051 (D.N.J. Feb. 9, 2018)....................................9

*New Jersey Regional Council of Carpenters v. D.R. Horton, Inc.*,
No. 08-CV-1731, 2011 WL 4499276 (D.N.J. Sept. 27, 2011).............................................17

*Newton AC/DC Fund L.P. v. Hector DAO*,
No. 24-CV-722, 2024 WL 580182 (D.N.J. Feb. 1, 2024).................................................12

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ..................................................................................6

*Oki Semiconductor Company v. Wells Fargo Bank*,
298 F.3d 768, 771 (9th Cir. 2002)......................................................................15, 16

*Read v. Profeta*,
397 F. Supp. 3d 597 (D.N.J. 2019) .........................................................................17

*Reckling v. Okechuku*,
No. 07-CV-1699, 2007 WL 2473831 (D.N.J. Aug. 27, 2007).............................................9

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017) ...................................................................4, 12, 13, 19

*Roe v. Healey*,
78 F.4th 11 (1st Cir. 2023)...................................................................................16

*Scalise v. Beech Aircraft Corp.*,
276 F. Supp. 58 (E.D. Pa. 1967) ...........................................................................10

*Schiermeyer v. Thurston*,
697 F. Supp. 3d 1265 (D. Utah 2023).....................................................................13

*Schrager v. Aldana*,
542 F. App'x 101 (3d Cir. 2013)............................................................................15

*Sea Salt, LLC v. TD Bank, NA*,
No. 2:20-CV-99, 2020 WL 7265854 (D. Me. Dec. 10, 2020) ...........................................19

*See Bristol-Myers Squibb Co. v. Superior Court of California*,
582 U.S. 255 (2017)...........................................................................................7

*See M.H. ex rel. C.H. v. Omegle.com LLC*,
No. 20-CV-11294, 2021 WL 1050234 (D.N.J. Mar. 19, 2021) ..........................................6

*Sharp v. Kean University*,
153 F. Supp. 3d 669 (D.N.J. 2015) ........................................................................5

*Shaw v. Vircurex*,
No. 18-CV-67, 2019 WL 2636271 (D. Colo. Feb. 21, 2019) ............................................7

*Sierra v. Trafigura Trading LLC*,
    No. 22-CV-366, 2024 WL 3823018 (D. Del. Aug. 18, 2024)...............................................9

*Simplot India LLC v. Himalaya Food International Ltd.*,
    No. 23-CV-1612, 2024 WL 1136791 (D.N.J. Mar. 15, 2024) ...............................................6

*Snowdy v. Mercedes-Benz USA, LLC*,
    No. 23-CV-1681, 2024 WL 1366446 (D.N.J. Apr. 1. 2024)...............................................18

*Vita-Pure, Inc. v. Bhatia*,
    No. 2:14-CV-7831, 2015 WL 1496396 (D.N.J. Apr. 1, 2015) ...............................................12

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................7

*Zangara v. National Board of Medical Examiners*,
    No. 22-1559, 2023 WL 2868223 (D.N.J. Apr. 6, 2023)...............................................4

*Zavala v. Wal-Mart Stores, Inc.*,
    447 F. Supp. 2d 379 (D.N.J. 2006) ...............................................17

**STATUTES**

18 U.S.C. § 1962...............................................16

18 U.S.C. § 1964...............................................13

Fla. Stat. § 48.031...............................................8

Fla. Stat. § 48.062...............................................8

**RULES**

Fed. R. Civ. P. 4...............................................5, 8

N.J. Ct. R. 4:4-4...............................................8

**TREATISES**

36 Am. Jur. 2d Foreign Corporations § 463 ...............................................9

## INTRODUCTION

Plaintiff David Gonzalez alleges that, in 2021, an unidentified hacker stole his cryptocurrency assets from a non-party crypto exchange, Coinbase, and then deposited those assets with Binance, a cryptocurrency exchange operated by Defendant Binance Holdings, Ltd. ("BHL"). Three years later, Plaintiff has moved for a preliminary injunction against BHL, its founder Changpeng Zhao, and a third Defendant, BAM Trading Services, Inc. ("BAM"), asking this Court to immediately freeze certain cryptocurrency assets and transfer them to Plaintiff. Plaintiff's motion can be easily denied for three reasons: (1) he has not satisfied the threshold requirements of personal jurisdiction; (2) he has not addressed the deficiencies the Court identified when it *sua sponte* denied his request for a temporary restraining order ("TRO"); and (3) he has not met any of the required elements of the "extraordinary remedy" of preliminary injunctive relief.

As an initial matter, Plaintiff failed to carry his burden to establish personal jurisdiction, which requires both proper service of process and constitutionally sufficient minimum contacts. Plaintiff failed to serve both BHL and Mr. Zhao, delivering the summons and complaint only to agents and employees of BAM, a separate company. Plaintiff also failed to plead a plausible basis for jurisdiction because Mr. Zhao is a foreign citizen domiciled abroad, and BHL is a foreign company with no U.S. offices. And Plaintiff has not alleged sufficient contacts to establish personal jurisdiction in the State of New Jersey. Indeed, neither BHL nor Mr. Zhao is alleged to have done *anything* in New Jersey that has any relation to Plaintiff's claims.

Even if Plaintiff cleared this threshold hurdle (and he has not), he failed to establish irreparable harm. The Court *sua sponte* denied Plaintiff's request for a TRO because he did not identify any imminent threat; nothing has changed since the Court's ruling. Moreover, as the Court likewise found, Plaintiff's claims are compensable by money damages, and thus he cannot satisfy the irreparable harm requirement. In any event, Plaintiff cannot show a likelihood of success on

the merits. Plaintiff brings claims of conversion, aiding and abetting conversion, unjust enrichment, and civil RICO. The thrust of each claim is the same: if BHL had more stringent transaction monitoring protocols, it could have somehow prevented the unidentified hacker(s) from stealing Plaintiff's assets from the separate crypto exchange Coinbase, or that the unidentified party's theft would have been detected and somehow ameliorated after the fact. Defendants' complete lack of involvement in the alleged theft dooms each of his claims: conversion requires the "wrongful control" of property; unjust enrichment requires a "direct relationship" between the plaintiff and defendant; and civil RICO requires "direct" causation.

Finally, the balance of harms and public interest weigh decidedly against a preliminary injunction. The type of extraordinary relief Plaintiff seeks—seizing assets based on minimal evidence and without notice to those assets' owners—is unfair to the owners of those assets and, if routinely granted, would be highly disruptive to financial exchanges in the crypto sector and beyond, with no benefit to the public.

## BACKGROUND

### I.    Plaintiff's Allegations

Plaintiff commenced this action against Defendants BHL; BAM; Mr. Zhao; and the unknown hacker(s), named as "XYZ Corp. Inc. (1–100)" and "John Does (1–100)." (ECF 1 ("Compl.") ¶¶ 8–10, 17.) Plaintiff brings claims against all Defendants for conversion, aiding and abetting conversion, unjust enrichment, and civil RICO. (*See generally id.*)

Plaintiff's claims arise from the same event: on or around May 8, 2021, he allegedly discovered that an unknown hacker had stolen cryptocurrency from his account with Coinbase, a crypto exchange unaffiliated with Defendants. (*Id.* ¶ 80.) Due to the "public nature of blockchain," Plaintiff allegedly discovered that the hacker "deposited his cryptocurrency with Defendants." (*Id.* ¶ 83.) Plaintiff alleges that, at unidentified times and through unidentified means, he demanded

Defendants return his cryptocurrency, but "to no avail." (*Id.* ¶ 84.) In support of his allegations, Plaintiff attached "Exhibit A" (ECF 9-1), which is purportedly proof of his blockchain ledger tracing and "his deposit of funds from his Chase bank account into Coiinbase [*sic*]." (Compl. ¶ 4 n.2.) The exhibit appears to be a Google document titled "AbolisherWalletHack" and purports to show various cryptocurrency transactions. (ECF 9-1.)

## II.    Procedural Background

Plaintiff commenced this action on August 18, 2024, more than three years after Plaintiff purportedly discovered the theft of his cryptocurrency from Coinbase. (Compl.) He attempted to serve BHL through BAM's registered agent in New Jersey (ECF 5, 7), and attempted to serve Mr. Zhao through a "clerk" at BAM's business address in Florida (ECF 11.)

The same day Plaintiff filed the Complaint, he also filed a motion for a TRO and preliminary injunction. (ECF No 2-1 ("Mot.").) Plaintiff claimed that his three-year-old claims raised "emergent" issues, and sought to "prohibit[] the transfer of assets" stolen in May 2021 and to "transfer the assets . . . to [his] account." (Mot. at 2.)

The following day, August 19, the Court *sua sponte* denied Plaintiff's motion for a TRO. (ECF 4 ("TRO Order").) The Court explained that Plaintiff had failed to show that "he faces impending irreparable harm if the requested injunctive relief is denied." (*Id.* at 3.) According to the Court, although Plaintiff speculated that the crypto assets might imminently disappear, he did not "allege any presently existing threat" of that happening "nor point to any evidence indicating how and when this purported loss may occur." (*Id.*) The Court further noted that Plaintiff failed to explain why he waited *three years* from the theft to bring the application and, moreover, that harms "compensable in money . . . cannot satisfy the irreparable injury requirement." (*Id.* (citation omitted).) Upon the Court's directions (*id.* at 4–5), Plaintiff attempted to serve copies of the order

- 3 -

denying the TRO on Mr. Zhao and BHL, but did so improperly, attempting service only on an employee at BAM's Florida office. (ECF 10, 12.)

## ARGUMENT

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms*., Inc., 765 F.3d 205, 210 (3d Cir. 2014) (quotation marks omitted). Parties seeking a preliminary injunction must demonstrate that they are "more likely than not to suffer irreparable harm in the absence of preliminary relief" and have "a likelihood of success on the merits." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If these prerequisites are met, the court will consider "the possibility of harm to other interested persons from the grant or denial of the injunction" and "the public interest." *Id*. at 176 (citation omitted).[1]

## I.    Plaintiff Fails to Clear the Threshold Hurdle of Establishing Personal Jurisdiction Over Mr. Zhao or BHL

Personal jurisdiction is a threshold issue that "the Court must address *before* . . . addresses[ing] the merits of the preliminary injunction." *Zangara v. Nat'l Bd. Of Med. Examiners*, No. 22-CV-1559, 2023 WL 2868223, at *4 (D.N.J. Apr. 6, 2023) (emphasis added) (citing *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 229-30 (3d Cir. 2002)); *see also New Earthshell Corp. v. Lycos Internet Ltd.*, No. 14-CV-7665, 2015 WL 170564, at *2 (D.N.J. Jan. 12, 2015) (similar). To establish personal jurisdiction, Plaintiff bears the burden of showing both that

---

[1]    This already high standard is even higher where, as here, "the plaintiff is asking the Court to order an affirmative act rather than a stay to maintain the status quo." *Beacon Sales Acquisition, Inc. v. Bd. of Trustees*, 425 F. Supp. 3d 377, 385 (D.N.J. 2019); *see Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) ("where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm"). This heightened standard applies to Plaintiff's request for the Court to affirmatively freeze and transfer crypto assets from an unidentified individual's account.

Defendants have sufficient minimum contacts to provide a basis for jurisdiction, *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992), and that he properly served Defendants, *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 677 n.5 (D.N.J. 2015). Plaintiff fails to make either showing.

### A.    Plaintiff Fails To Establish Personal Jurisdiction

Personal jurisdiction requires the defendant to have "constitutionally sufficient 'minimum contacts' with" the forum. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (explaining that New Jersey's long-arm statute permits jurisdiction coextensive with due process); Fed. R. Civ. P. 4(k)(1)(A). Plaintiff attempts only to establish general—rather than specific— jurisdiction. (Compl. ¶¶ 19–20.) General jurisdiction exists only where the defendants' "affiliations with the State are so continuous and systematic as to render them essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (cleaned up). For an individual defendant, general jurisdiction lies where he or she is domiciled. *Id.* at 137. For a corporate defendant, general jurisdiction lies in the state where the defendant is incorporated and has its principal place of business, absent the "exceptional case" where the defendant's operations in another state are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

Plaintiff has not established general jurisdiction over Mr. Zhao or BHL. The Complaint alleges that Mr. Zhao is a Canadian citizen who has lived in Dubai and Paris. (Compl. ¶ 14); *see Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (plaintiff "cites no authority for the assertion that a natural person who is a citizen of a foreign nation and residing there can be subject to general jurisdiction in the United States"). The Complaint alleges that BHL is "registered and [has] its principal place of business" in the Cayman Islands, and does not claim that this is an "exceptional case" where general jurisdiction over BHL is appropriate outside of the Cayman Islands. (Compl. ¶ 9.) Instead, the Complaint alleges merely that BHL "operate[d] globally" and,

by virtue of having U.S. customers, necessarily had New Jersey customers. (*Id.* ¶¶ 19, 44, 61.) This does not come close to the required showing that BHL is "at home" in New Jersey. *See, e.g.*, *Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

The Complaint further alleges that the Court can assert jurisdiction over BHL because it is "an alter ego of BAM" (Compl. ¶ 20), but—even taking that dubious assertion to be true (*see*, § I.C, *infra*)—Plaintiff does not allege that BAM is at home in New Jersey, either. To the contrary, the Complaint alleges that BAM is a Delaware corporation headquartered in Florida. (Compl. ¶ 8.) To the extent Plaintiff relies on BAM's registered agent in New Jersey, courts in this District agree that "registering to do business here and accepting service by [a] designated agent" does not confer general jurisdiction. *Simplot India LLC v. Himalaya Food Int'l Ltd.*, No. 23-CV-1612, 2024 WL 1136791, at *9–10 (D.N.J. Mar. 15, 2024) (collecting cases).

While Plaintiff fails to allege any theory of specific jurisdiction, any such theory would plainly fail. Specific jurisdiction asks whether the defendant "purposefully directed its activities at the forum," and whether the claims "arise out of or relate to at least one of those activities." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up) . To satisfy the "relatedness" prong, it is not enough that the defendant's activities directed at the forum are a but-for cause of plaintiff's claim; "specific jurisdiction requires a closer and more direct causal connection." *Id.* at 323.

Plaintiff fails at both steps. *First,* the Complaint lacks any allegations that Mr. Zhao or BHL "purposefully directed" any activities at New Jersey. *See M.H. ex rel. C.H. v. Omegle.com LLC*, No. 20-CV-11294, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) ("[Plaintiffs] do not allege anything about [defendant]'s website that is New Jersey-specific. Rather, [defendant] is a

generally accessible website that looks and operates the same for users across the world."). *Second*, Plaintiff does not allege that his injury stemmed from either his or the hacker's access to Binance in New Jersey. *See Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 264–644 (2017) (no specific jurisdiction where everything "giving rise to the . . . claims occurred elsewhere"). The only connection between this case and New Jersey is Plaintiff, but his contacts do not "drive the jurisdictional analysis." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (rejecting jurisdiction over claims Nevada residents brought in Nevada federal court); *see Shaw v. Vircurex*, No. 18-CV-67, 2019 WL 2636271, at *4 (D. Colo. Feb. 21, 2019) (dismissing claims arising from the collapse of a crypto exchange where the "only alleged connection between defendants and Colorado is harm suffered by a Colorado resident").[2]

### B.   Service Upon Mr. Zhao and BHL Was Improper

Even if the Court *could* theoretically exercise personal jurisdiction over non-residents Mr. Zhao and BHL, it cannot do so here because Plaintiff failed to properly effect service of process. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 381 (3d Cir. 2022) ("For a court to exercise personal jurisdiction over a defendant, the defendant must be served process. . . ."); *Dietz v. Nat'l City Mortg. Co.*, No. 1:08-CV-1058, 2008 WL 2857722, at *1–2 (M.D. Pa. July 21, 2008) (declining to consider merits of preliminary injunction where defendant was not properly served

---

[2]   There are limited circumstances where jurisdiction over a defendant facing a RICO claim can be based on nationwide contacts, rather than contacts with the forum. This is permitted only if there is personal jurisdiction in the forum "over at least one defendant" and the "ends of justice" require the other defendants' presence in the forum. *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 120 (3d Cir. 2020). Plaintiff has not shown either. And even if the forum for the jurisdictional analysis were the United States, Plaintiff has not shown that either Mr. Zhao or BHL is "at home" in the United States or that either did anything in the United States giving rise to the claims here.

with complaint).[3] Under Rule 4 of the Federal Rules of Civil Procedure, service may be effectuated

in the United States by: (1) following the requirements enumerated in Rule 4; or (2) following state

law for serving summons in the state "where the district court is located or where service is made."

Fed. R. Civ. P. 4(e)(1).

With respect to Mr. Zhao, an individual defendant, service in the United States must be

effectuated by "personally" delivering the complaint and summons; leaving copies at the

individual's "dwelling or usual place of abode with someone of suitable age and discretion who

resides there;" or via "an agent authorized by appointment or by law" for service. Fed. R. Civ. P.

4(e); *see* N.J. Ct. R. 4:4-4 (similar); Fla. Stat. § 48.031 (similar, with no agent provision).

Plaintiff's effort to serve Mr. Zhao at *BAM's* address in Florida (ECF 11, 12), is plainly deficient.

BAM's Florida office is not Mr. Zhao's "dwelling or usual place of abode," and there is no

evidence that BAM's "clerk" was authorized by Mr. Zhao to accept service of process for him.

Likewise deficient is Plaintiff's effort to serve BHL through BAM's registered agent in

New Jersey (ECF 5, 7), and a "clerk" at BAM's business address in Florida.[4]  (ECF 10.) *See* Fed.

R. Civ. P. 4(b) (service on unincorporated entity via "officer, a managing or general agent, or any

other agent authorized by appointment or by law to receive service"); N.J. Ct. R. 4:4-4(a)(5)

(service on unincorporated entity through "an officer or managing agent"); Fla. Stat. § 48.062.

(2019) (service on LLC through its registered agent or, in some cases, manager of a manager-

managed LLC, member of a member-managed LLC, designated employee, or "person in charge"

---

[3]  While Rule 65(a) permits the issuance of a preliminary injunction on "notice," this Court should decline to rule on the merits of the preliminary injunction absent personal jurisdiction over Defendants. *See Dietz*, 2008 WL 2857722, at *1–2.

[4]   Plaintiff's attempted service on BHL in Florida is additionally defective because he did not serve copies of the complaint and summons, but merely copies of the "Orders" in this case. (ECF 10.) *See* Fed. R. Civ. P. 4(c)(1).

of the LLC). Plaintiff does not contend that BHL authorized the people who received the papers to accept service on its behalf, nor could he (*see* Alor Decl. ¶¶ 4–6), and the Court therefore lacks jurisdiction over BHL as well.

### C. Unsupported Alter Ego Allegations Cannot Resuscitate Plaintiff's Deficient Service Upon BHL

In an attempt to excuse this clearly ineffective service, Plaintiff claims that BAM and BHL are alter egos, such that service on BAM should be imputed to BHL. (Compl. ¶¶ 21–41.)[5] But Plaintiff does not come close to the stringent showing required to prove alter ego status. The question of whether to "pierce the corporate veil" of a company to reach its owners is governed by that company's state of incorporation, *New Jersey Performing Arts Center Corp. v. ZMAN Time Prods., Inc*., No. 17-CV-2901, 2018 WL 814051, at *6 (D.N.J. Feb. 9, 2018), which is Delaware for BAM (Compl. ¶ 8). Under Delaware law, the distinction between corporations is disregarded only in the "exceptional circumstances" where a "parent company abuses its position to the point where the subsidiary had no separate mind, will or existence of its own." *Sierra v. Trafigura Trading LLC*, No. 22-CV-366, 2024 WL 3823018, at *10 (D. Del. Aug. 18, 2024) (citations omitted).

For "service of process on [the subsidiary] . . . to give adequate notice to the parent corporation," *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 514 n.3 (D.N.J. 2008) (quotation omitted), the two companies must be alter egos at the time of service. *See Reckling v. Okechuku*, No. 07-CV-1699, 2007 WL 2473831, at *5 (D.N.J. Aug. 27, 2007) (proper service turned on whether the person served was an "agent *at the time* he accepted service on [the individual's] behalf") (emphasis added); 36 Am. Jur. 2d Foreign Corporations § 463 (validity of service on

---

[5]  Plaintiff does not allege alter ego status as to Mr. Zhao.

alleged corporate agent "is determined by the relation of the person to the corporation at the time of the service of process," not relationships during "any other period"). Thus, "when the person served is not the alter ego of the defendant *at the time of the attempted service* of process, the attempted service is ineffectual." *Scalise v. Beech Aircraft Corp.*, 276 F. Supp. 58, 63 (E.D. Pa. 1967) (emphasis added).

Plaintiff's alter ego theory concerns only BAM's founding in 2019 and the years immediately thereafter, with the most recent allegations relating to June 2023.[6] These outdated allegations say nothing about BAM and BHL's relationship in August 2024, the time of service, and hence are irrelevant. This is particularly so because BHL and Mr. Zhao entered plea agreements with the government in November 2023. As part of its plea agreement, BHL overhauled its corporate operations entirely by, among other things, agreeing to select a new CEO, implement compliance programs, and to be subjected to an independent monitor for three years. (Michael Decl. Ex. 1, at 6, 8–10.) At the same time, Mr. Zhao stepped down from any role with BHL or BAM. (*Id.* at 9; *see also* Michael Decl. Ex. 2 (Nov. 21, 2023 Agreement between Zhao and BAM) (granting another individual the "full power to represent [Zhao's] voting interest as the sole shareholder of [BAM]" and to "service as proxy for, and a designated representative of" BAM).) The Complaint's allegations, which focus on how Mr. Zhao ran the businesses of BHL *in the past* (*see, e.g.*, Compl. ¶¶ 21, 32, 38), shed no light on the relationship between BAM and BHL

---

[6]    *See* Compl. ¶ 22 (actions during BAM's founding); ¶ 23 (strategy document from 2018); ¶ 24 (influence on BAM's "strategy, launch, and early operation"); ¶ 31 (actions "related to the launch of [BAM]"); ¶ 34 (discussions on the day "the BAM platform was announced"); *see also id.* ¶¶ 25, 39 (transfers in "the first three months of 2021" and June 2020); ¶ 30 (audit conducted in October 2020); ¶ 32 (expenses in January 2020 and January 2021); ¶¶ 33, 35 (CEO's tenure from June 2019 to March 2021 and statement from November 2020); ¶¶ 36–37 (data and technology as of 2021); ¶¶ 26–27 (access to bank accounts shut down and liquidated in May 2023); ¶¶ 28–29 (terms of service as of June 5, 2023); ¶¶ 38, 41 (signatory authority as of December and July 2021 and May 2023).

in 2024. In fact, far from being alter egos, the two companies have separate boards of directors, separate management, and separate finances. (Alor Decl. ¶ 7.) Neither controls the operations of the other. (*Id.*)[7]

## II.    Plaintiff Fails to Show That He Is Likely to Suffer Irreparable Harm

To establish irreparable harm, a plaintiff must identify a harm that is "imminent, probable, and of such irreversible character that prospective relief would be inadequate to make the movant whole." *Jackson v. Murphy*, No. 23-CV-23183, 2024 WL 111025, at *1 (D.N.J. Jan. 10, 2024) (citation omitted). "The mere 'risk of irreparable harm is not enough.'" *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, Nos. 22-1710 & 22-1885, 2022 WL 3536494, at *5 (3d Cir. Aug. 5, 2022) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). In denying Plaintiff's TRO, the Court already found that he failed to meet this burden; nothing has changed since that decision.

As before, Plaintiff claims that he faces the risk of "further dissipation of [his] cryptocurrency or the proceeds thereof." (Mot. at 23.) But Plaintiff offers no evidence or supporting allegations for this bare assertion—his Complaint does not even mention the risk of dissipation. (*See* TRO Order at 3 ("[Plaintiff ]does not allege any presently existing threat nor point to any evidence indicating how and when this purported loss may occur.").) Mere "speculat[ion] that Defendants *may* dissipate the funds" is insufficient to establish irreparable harm. *Clemente v.*

---

[7]  For avoidance of doubt, BHL disputes that it was the alter ego of BAM at any point, and courts have rejected this same argument in the past. *Gadasalli v. Bulasa*, No. 4:22-CV-249, 2023 WL 3586424, at *3 (E.D. Tex. May 22, 2023) (rejecting argument that BAM is Binance's alter ego); *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020) (same). The Complaint's allegations are largely founded on Mr. Zhao and BHL's plea agreements, which describe BHL's operations *apart from*, rather than through or on behalf of, BAM. (Michael Decl. Ex. 1, at Attachment A, pg. 12 ¶ 37 (describing operations on Binance platform, separate and apart from BAM).) Nothing in Mr. Zhao or BHL's plea admits that BHL is BAM's alter ego. The underlying conduct centered on enabling certain U.S.-connected customers to trade on the Binance platform. This has nothing to do with asserting improper control over BAM. (*See, e.g.*, *id.*)

*Doe*, No. 24-CV-314, 2024 WL 384713, at \*3–4 (D.N.J. Feb. 1, 2024); *see also Hoxworth v. Blinder, Robinson & Co., Inc*., 903 F.2d 186, 197 (3d Cir. 1990) (holding that "one conclusory affidavit" from the plaintiff claiming "that the defendant can easily make away with or transport his money or goods" is insufficient to show irreparable harm (citation omitted)). Nor has Plaintiff explained why, if the risk of dissipation was imminent, he waited to bring this motion until "more than three years" after the alleged theft. (TRO Order at 3); *see Vita-Pure, Inc. v. Bhatia*, No. 2:14-CV-7831, 2015 WL 1496396, at \*4 (D.N.J. Apr. 1, 2015) (explaining that even a "several month delay in bringing a preliminary injunction motion can undermine an asserted claim of imminent, irreparable harm" (collecting cases)).

Even if Plaintiff could show that he faces imminent harm, he still could not show that the harm would be *irreparable* because harms "compensable in money . . . cannot satisfy the irreparable injury requirement." (TRO Order at 3 (quoting *Frank's GMC Truck Ctr. v. Gen. Motors Corp.*, 847 F.2d 100, 102–03 (3d Cir. 1988)); *see also Reilly*, 858 F.3d at 179 n.4 (the "availability of money damages for an injury typically will preclude a finding of irreparable harm"). Here, the Complaint, which seeks "actual and compensatory damages," provides a concrete number—$30 million—for the peak value of stolen tokens, and Plaintiff's brief confirms that he seeks to hold Defendants liable for that numerical "value." (Compl. ¶ 85 & pg. 50; Mot. at 22.) Plaintiff offers no reason why these potential damages could not be readily calculated or collected. Because Plaintiff's claims are, if proven, compensable by money, there is no irreparable harm as a matter of law. *See Newton AC/DC Fund L.P. v. Hector DAO*, No. 24-CV-722, 2024 WL 580182, at \*3 (D.N.J. Feb. 1, 2024) (refusing to freeze cryptocurrency assets because the plaintiff made no showing that defendants "would not be able to pay an award after trial"); *Schiermeyer v. Thurston*, 697 F. Supp. 3d 1265, 1273 (D. Utah 2023) (denying injunctive relief because plaintiff had "not

provided any evidence that [the defendant] lacks enough other resources to compensate" the stolen cryptocurrency); *see also Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996) (explaining that freezing assets is an "extraordinary measure[]" reserved for only an "extraordinary case").

## III. Plaintiff Fails to Show He Is Likely to Succeed on Any of His Claims

Even if Plaintiff established personal jurisdiction, and even if he established irreparable harm, his motion should still be dismissed for failure to establish a likelihood of success on the merits. *Reilly*, 858 F.3d at 179.

### A. Plaintiff Is Not Likely to Succeed on His RICO Claims

#### 1. Plaintiff Has Not Met RICO's Causation Requirement

RICO § 1964(c) creates a private right of action for "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Under this standard, the predicate offense must be both the actual (but-for) cause and the proximate cause of the injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). To establish "but-for" causation, the plaintiff must "identify [a] specific" injury that he would not have suffered "but for the alleged fraudulent scheme." *In re Mallinckrodt PLC*, 638 B.R. 57, 77 (Bankr. D. Del. 2021). Proximate causation is a higher standard, which "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (quoting *Holmes*, 503 U.S. at 274). A RICO plaintiff generally fails to plead proximate causation if his or her injury is more than one step removed from the alleged predicate act. *See id.* at 10 (in RICO cases, the law generally does not "go beyond the first step"). Plaintiff falls far short of alleging either but-for or proximate causation.

Although courts generally resolve RICO cases under the statute's more demanding proximate cause standard, Plaintiff's claim relies on a series of speculative assumptions that fail to even adequately allege but-for causation. Plaintiff attempts to tie his injury to Defendants' alleged predicate acts through convoluted inferences, many resting on pure conjecture:

1.  Defendants failed to register BHL as a money transmitting business or to implement adequate anti-money laundering ("AML") policies.

2.  If BHL had registered as a money transmitting business and implemented adequate AML policies, BHL would have properly vetted customers and flagged suspicious transactions.

3.  If BHL had properly vetted customers and flagged suspicious transactions, it would have rejected the hacker's attempt to deposit Plaintiff's digital assets and instead flagged those accounts.

4.  If BHL had flagged the account or transaction of the hacker, BHL would have reported the transaction to U.S. law enforcement and frozen the hacker's account.

5.  If BHL had reported those transactions, U.S. law enforcement would have investigated these reports.

6.  If U.S. law enforcement had investigated the reports, it would have engaged in a series of steps resulting in the cryptocurrency assets somehow being returned to Plaintiff.

Plaintiff's multi-step causal "chain" is riddled with logical fallacies. The Complaint does not plausibly allege what hypothetical AML policy Defendants would have implemented, how that policy would have prevented the specific hacker from depositing the assets on Binance, or whether U.S. law enforcement would have investigated—or taken action against—the hacker.

More fundamentally, even the most effective AML policies on *Binance* would not have prevented the hacker from stealing Plaintiff's funds from *Coinbase*. Plaintiff was injured well before Defendants' alleged lack of AML policies came into the picture. *See Flair Int'l Corp. v. Heisler*, 173 F.3d 844, 1999 WL 132181, at *3 (2d Cir. 1999) ("[A]s [the alleged predicate act] postdated the alleged losses, it could not have been even a 'but-for' cause of those losses, let alone their proximate cause."). While the Complaint suggests that Defendants' allegedly ineffective

- 14 -

AML policy "encouraged" thieves to steal cryptocurrency and purportedly turned Binance into a "hub and magnet for criminals" (Compl. ¶¶ 65, 143(a)), this is pure speculation. Failing to implement an AML policy does not make Defendants the but-for cause of every possible crypto-related crime.

Even if Plaintiff had adequately alleged but-for causation, proximate causation is a higher bar that readily forecloses his claim. In analyzing proximate cause, courts consider "(1) the directness of the injury; (2) the ease of apportioning damages among other plaintiffs affected by the alleged violation; and (3) the possibility that others, more directly injured, could vindicate the claim." *Schrager v. Aldana*, 542 F. App'x 101, 104 (3d Cir. 2013).

*First*, Plaintiff's injury is many steps removed from Defendants' alleged predicate offenses. Plaintiff's injury was caused "not just [by] separate *actions*, but separate actions carried out by separate *parties*." *Hemi Grp.*, 559 U.S. at 11 (emphasis in original). Courts reject RICO claims on proximate causation grounds where a third-party is a more direct cause of the alleged harm. *See, e.g.*, *id.* (rejecting RICO claim for a retailer's failure to provide information that allegedly caused the state to lose tax revenues, because the resident's failure to pay taxes was the direct cause of the injury); *Knopick v. UBS Fin. Servs., Inc.*, 121 F. Supp. 3d 444, 461–62 (E.D. Pa. 2015) (rejecting RICO claim against defendant who fraudulently induced plaintiff to enter into an investment opportunity, because non-parties' "reckless investing and . . . subsequent margin loan calls" were the direct causes of his harm).

The Ninth Circuit's closely analogous decision in *Oki Semiconductor Company v. Wells Fargo Bank* is directly on point. There, a victim of armed robbery sued a bank under RICO, alleging a bank employee's laundering of proceeds from the armed robbery caused his harm. 298 F.3d 768, 771 (9th Cir. 2002). The Ninth Circuit rejected the argument, holding that "[t]he direct

and proximate cause of [plaintiff's] loss was not [the employee's] money laundering . . . ; it was theft." 298 F.3d at 774. Because the plaintiff's allegations established, "at most, that [the employee] laundered the proceeds *after* the Conspiracy stole the semiconductors and sold them," the money laundering lacked a direct relationship to the armed robbery. *Id.* (emphasis in original). This was true even though the defendant's employee *knew about the armed robbery and provided support for it. See id.* Here, the case for proximate causation is substantially weaker, given that Plaintiff cannot plausibly allege that Defendants *knew about or supported* the specific scheme that stole his money.

*Second*, the United States, the direct victim of the alleged predicate acts, has vindicated the law here through its November 2023 resolutions with Defendants. Courts frequently find proximate cause inadequately alleged where another entity, such as the government, is better positioned to enforce the law and hold the appropriate parties accountable. *See, e.g., Hemi Grp.*, 559 U.S. at 12 (State of New York was better positioned to sue, as the direct victim of tax fraud); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458–61 (2006) (same); *see also Roe v. Healey*, 78 F.4th 11, 27–28 (1st Cir. 2023) (collecting cases rejecting RICO claims because the United States was a more direct victim of the alleged violations). RICO does not permit duplicative relief for legal violations that the government is better positioned to enforce and, here, *has* enforced.

## 2. The Complaint Fails to Allege a Distinct "Enterprise"

Plaintiff's RICO claim also requires him to identify a "person" who "conduct[ed]" the affairs of an "enterprise" through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "[T]he 'person' charged with violation of § 1962(c) must be distinct from the "enterprise." *Brittingham v. Mobil Corp*., 943 F.2d 297, 301 (3d Cir. 1991). Here, Plaintiff alleges that all three Defendants (the RICO "persons") *are* the "enterprise." (Compl. ¶¶ 118–19, 124.) Courts in this District regularly reject claims for violating RICO's distinctiveness requirement in this manner. *See Digital*

- 16 -

*Wholesale of New York, LLC v. Am. Eagle Trading Grp., LLC*, No. 16-CV-3487, 2016 WL 5660462, at *4 (D.N.J. Sept. 29, 2016) ("[T]he enterprise is the same as the person, and the RICO claim must be dismissed"); *New Jersey Reg'l Council of Carpenters v. D.R. Horton, Inc.*, No. 08-CV-1731, 2011 WL 4499276, at *9 (D.N.J. Sept. 27, 2011) ("Pursuant to the distinctness requirement, [the alleged persons] cannot also constitute the enterprise"); *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 383 (D.N.J. 2006) ("If the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical."). Given this, Plaintiff cannot establish a likelihood of success on his RICO claim.

### B.     Plaintiff Is Not Likely to Succeed on His Conversion Claims

Plaintiff's claims for conversion and aiding and abetting conversion are meritless. *First*, New Jersey—like many other states—limits conversion to tangible property, but Plaintiff asserts conversion claims to recover intangible cryptocurrency. *Read v. Profeta*, 397 F. Supp. 3d 597, 641 (D.N.J. 2019) ("[T]his District has consistently interpreted New Jersey law to limit conversion to tangible property."); *see also In re Blockfi, Inc*., No. 22-19361, 2023 WL 5597165, at *3 (Bankr. D.N.J. Aug. 29, 2023) (classifying bitcoin as a "general intangible").

*Second*, conversion is premised on the "wrongful" taking and possessing of another's property. *Cargill Glob. Trading v. Applied Dev. Co*., 706 F. Supp. 2d 563, 578–79 (D.N.J. 2010) (because defendant "did nothing legally wrong . . . [plaintiff] has failed to make out a conversion claim"). Plaintiff does not allege that Defendants converted his crypto; rather, he asserts that unidentified hackers did so. This alone is fatal to Plaintiff's conversion theory.

*Third*, a party can be liable for aiding and abetting conversion when the party "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement." *Cafaro v. HMC Int'l, LLC*, No. 07-CV-2793, 2009 WL 1622825, at *4 (D.N.J.

June 10, 2009) (quotation omitted). The Complaint is devoid of any allegation that Defendants had

any knowledge that the hacker allegedly stole and laundered Plaintiff's crypto assets. Nor does the

Complaint adequately allege that defendants provided substantial assistance. Rather, as discussed

in Section III.A.1, *supra*, Plaintiff relies on a dizzying set of inferences and assumptions to attempt

to tie Defendants' alleged lack of AML procedures to his losses.

### C.    Plaintiff Is Not Likely to Succeed on His Unjust Enrichment Claims

Plaintiff's unjust enrichment claim is likewise defective. To "state a claim for unjust

enrichment under New Jersey law, a plaintiff must establish that plaintiff expected remuneration

from the defendant at the time it performed or conferred a benefit on defendant and that the failure

of remuneration enriched defendant beyond its contractual rights." *Argabright v. Rheem Mfg. Co.*,

258 F. Supp. 3d 470, 493 (D.N.J. 2017) (citation and alterations omitted). Critically, it is "the

plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis

of an unjust enrichment claim." *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-CV-1681, 2024 WL

1366446, at *12 (D.N.J. Apr. 1. 2024) (citation omitted). Necessarily, then, "a claim for unjust

enrichment requires a direct relationship between the parties" with respect to the benefit conferred.

*Id*. (quotation omitted); *see also Eli Lilly & Co. v. Roussel Corp*., 23 F. Supp. 2d 460, 496 (D.N.J.

1998) (a pharmaceutical company alleging its competitor fraudulently obtained FDA approval for

a generic antibiotic could not state a claim for unjust enrichment because the allegedly unjust

"benefits" were conferred by third parties—buyers of the antibiotics—and did not arise from any

direct relationship between the two companies).

But here, Plaintiff cannot identify any direct relationship with Defendants or any benefit

he conferred to them. Plaintiff alleges that "Defendants unjustly enriched themselves by collecting

transaction fees arising from the trades of cryptocurrency that was stolen from Plaintiff and

laundered through Binance accounts." (Mot. at 15; *see also* Compl. ¶ 109.) But these "benefits"

were conferred by a "third party" (the account holder), not by Plaintiff, who has no "direct relationship" with Defendants whatsoever. *See Sea Salt, LLC v. TD Bank, NA*, No. 2:20-CV-99, 2020 WL 7265854, at *10 (D. Me. Dec. 10, 2020) (rejecting an unjust enrichment claim seeking to recover bank fees because "[e]ven if a benefit in the form of bank fees was conferred upon the defendants, any such benefit was conferred by [third parties], not by Plaintiff" (citation omitted)).

Plaintiff cites no case upholding an unjust enrichment claim on remotely similar facts. Instead, he cites two cases where government contracts could be voided for fraud or other illegality; neither involved unjust enrichment claims based on the conferral of benefits from a third party. (Mot. at 15 (citing *Manning Eng'g, Inc. v Hudson County Park Comm'n*, 74 N.J. 113 (1977), and *Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433 (1952).)

## IV.    An Injunction Risks Private Harm and Is Not in the Public Interest

Because Plaintiff has not established irreparable harm or a likelihood of success on the merits, the Court need not address the balance of harms and public interest. *See Reilly*, 858 F.3d at 176 (explaining that the court should address these factors only where "the party seeking the injunction meets the threshold on the first two" (citations omitted)). In any event, were the Court to reach these factors, they also weigh heavily against a preliminary injunction. The freezing and seizure of third-party funds, based solely on Plaintiff's speculative assertions and without any notice to those parties, risks significant private harm. Routinely granting applications like Plaintiff's would greatly disrupt financial and crypto markets, with no countervailing public interest.

## CONCLUSION

For the stated reasons, this Court should deny the motion for preliminary injunction.

Dated: September 13, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP        STEPTOE LLP

By: */s/ Anthony J. Staltari* _____        By: */s/ James L. Brochin* _____

    Anthony J. Staltari (Attorney No. 233022017)       James L. Brochin
    Peter H. Fountain (*pro hac vice*)              Charles Michael (*pro hac vice*)
    Michael A. Linneman (*pro hac vice*)       Andrew C. Adams (*pro hac vice*)
    51 Madison Avenue, 22nd Floor            B. Gammon Fain (*pro hac vice*)
    New York, New York 10010              Brendan Hammond (*pro hac vice*)
    (212) 849-7000                     1114 Avenue of the Americas
    anthonystaltari@quinnemanuel.com        New York, New York 10036
    peterfountain@quinnemanuel.com          (212) 506-3900
    michaellinneman@quinnemanuel.com       jbrochin@steptoe.com
                                      cmichael@steptoe.com
    Avi Perry (*pro hac vice*)                  aadams@steptoe.com
    1300 I Street, NW, Suite 900              gfain@steptoe.com
    Washington, D.C. 20005                bhammond@steptoe.com
    (202) 538-8000
    aviperry@quinnemanuel.com             *Attorneys for Defendant Binance Holdings Ltd.*

    Brenna Ledvora (*pro hac vice*)
    191 N. Wacker Drive, Suite 2700
    Chicago, Illinois 60606
    (312) 705-7400
    brennaledvora@quinnemanuel.com

*Attorneys for Defendant Changpeng Zhao*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify pursuant to 28 USC 1746 that on this date, I filed the annexed Memorandum of Law and accompanying Declarations and exhibits thereto with the CM/ECF System for U.S. District Court of the District of New Jersey and thereby effectuating service upon all counsel of record via electronic means.

I certify under the penalty of perjury that the foregoing are true and correct. Executed in New York, New York on this 13th day of September, 2024.

*/s/ Anthony J. Staltari*
_____
Anthony J. Staltari (Attorney No. 233022017)
