IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID GONZALEZ,

Plaintiff,

vs.

BAM TRADING SERVICES, INC., d/b/a BINANCE US, a Delaware corporation; BINANCE HOLDINGS, LTD, d/b/a BINANCE, a foreign company; CHANGPENG ZHAO; JOHN DOES (1-1) (fictitious names;) and ABC COMPANIES 1-10 (fictitious names),

Defendants.

Civil Action No. 2:24-CV-08521-BRM-CLW

Civil Action

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Robert A. Tandy, Esq. (RT0387)
Law Office of Robert A. Tandy, LLC
50 Tice Boulevard
Suite 250
Woodcliff Lake, NJ 07677
Phone: (201) 474-7103
Fax: (201) 474-7103
Email: rtandy@tandylaw.com
*Co-counsel for Plaintiff*

Eric J. Warner, Esq. (EW3946)
Law Office of Eric J. Warner, LLC
991 US Highway 22, Suite 200
Bridgewater, NJ 08807
Phone: (201) 403-5937
Fax: (877) 360-0508
Email: eric@ejwlawfirm.com
*Co-counsel for Plaintiff*

# TABLE OF CONTENTS


| | PAGE |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| LEGAL ARGUMENT | 2 |
| I. PLAINTIFF SUFFICIENTLY PLEADED PERSONAL JURISDICTION OVER THE DEFENDANTS | 2 |
| A. PLAINTIFF SUFFICIENTLY PLEADED SPECIFIC JURISDICTION OVER DEFENDANTS DUE TO THEIR CONTACTS IN THE FORUM | 2 |
| B. PLAINTIFF HAS SUFFICIENTLY PLEADED THAT DEFENDANTS ARE ALTER EGOS | 6 |
| II. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS | 11 |
| A. CONVERSION AND AIDING AND ABETTING CONVERSION | 11 |
| B. UNJUST ENRICHMENT | 12 |
| C. FRAUD AND RICO VIOLATIONS | 13 |
| III. PLAINTIFF RISKS IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF, AND THE BALANCE OF HARMS FAVORS PLAINTIFF | 14 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*,
42 F.3d 1421 (3rd Cir. 1994) ....................................................10

*Apollo Techs. Corp. v. Centrosphere Indus. Corp.*,
805 F. Supp. 1157 (D.N.J. 1992) ....................................................14

*Arthur v. St. Peters Hosp.*,
169 N.J. Super. 575, 405 A.2d 443 (Law Div.1979) ....................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................2

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................................................3

*C.B. Snyder Realty Co. v. National Newark Banking Co.*,
14 N.J. 146, 101 A.2d 544 (1953)....................................................11

*Cedric Kushner Prom'ns, Ltd. v. King*,
533 U.S. 158 (2001)....................................................13

*Chicago Title Ins. Co. v. Ellis*,
409 N.J. Super. 444 (App. Div. 2009)....................................................12

*County of Essex v. First Union Nat. Bank*,
373 N.J. Super. 543 (App. Div. 2004), *aff'd, remanded by* 186 N.J. 46 (2006)....................................................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................................................7

*FDASmart, Inc. v. Dishman Pharm. & Chemicals Ltd.*,
448 N.J. Super. 195 (App. Div. 2016)....................................................6

*Hirsch v. Phily*,
4 N.J. 408 (1950)....................................................12

*Hoxworth v. Blinder, Robinson & Co.*,
903 F.2d 186 (3d Cir. 1990)....................................................14

*In re Metformin Mktg. & Sales Practice Litig.*,
2022 U.S. Dist. LEXIS 59804 (D.N.J. Mar. 30, 2022).................................................... 11

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015)....................................................11

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989)……………………………………………………………14

*Kleiman v. Wright*,
2018 U.S. Dist. LEXIS (S.D. Fla. Dec. 27, 2018)…………………………………………12

*Laurel Gardens, LLC v. Mckenna*,
948 F.3d 105 (3d Cir. 2020) ……………………………………………………2, 6, 14

*Manning Eng'g, Inc. v Hudson County Park Comm'n*,
74 N.J. 113 (1977)……………………………………………………………………13

*Morton v. Beyer*,
822 F.2d 363 (3d Cir. 1987)……………………………………………………………14

*Napoli v. First Choice Loan Servs. Inc.*,
Civ. No. 19-7265, 2020 U.S. Dist. LEXIS 722, 2020 WL 39148 (D.N.J. Jan. 3, 2020)……...6

*Ox Labs Inc. v. BitPay, Inc.*,
848 F. App'x 795 (9th Cir. 2021) ..........................................................................14

*Rickman v. BMW of N. Am. LLC*,
538 F.Supp.3d 429 (D.N.J. 2021) ..........................................................................7

*SEC v. Binance Holdings Ltd.*,
Civil Action 23-1599 (ABJ), 2024 U.S. Dist. LEXIS 114924 (D.D.C. Jun 28, 2024)………...3

*SEC v. e-Smart Techs, Inc.*,
926 F. Supp. 2d 231 (D.D.C. 2013) ..........................................................................3

*Seltzer v. I.C. Optics, Ltd.*,
339 F. Supp. 2d 601 (D.N.J. 2004) ..........................................................................6

*Shadel v. Shell Oil Co.*,
195 N.J. Super. 311, 478 A.2d 1262 (Law Div.1984) ................................................11

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc.*,
387 N.J. Super. 469, 904 A.2d 775 (App. Div. 2006) ................................................12

*United Steel-workers of Am. v. Fort Pitt Steel Casting*,
598 F.2d 1273 (3d Cir. 1979)..........................................................................14

*Walden v. Fiore,*
571 U.S. 277 (2014)..........................................................................3

*Williams v. Binance,*
96 F.4th 129 (2d Cir. 2024) ..........................................................................2, 5

*Williams v. Yamaha Motor Co.,*
851 F.3d 1023 (9th Cir. 2017) ..........................................................................7

**Statutes and Other Authorities**

The Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters…………………………………………………………………………...11

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68………………...13

The Securities Act of 1933, 15 U.S.C. § 77a……………………………………………….…..3, 5

The Securities Exchange Act of 1934, 18 U.S.C. § 78a……………………………………………..3

**PRELIMINARY STATEMENT**

In a recent plea agreement between Defendant Binance Holdings Ltd. d/b/a Binance ("Binance") and the Department of Justice [Dkt. #31.3], Binance admits that Defendant BAM Trading Services Inc. d/b/a Binance.US ("BAM" or "Binance.US") was a front for Binance to continue operating illegally in the United States and was controlled by Defendant Changpeng Zhao ("CZ"). Binance admits: "[A] consultant . . . provided guidance for [Binance] to pursue the 'moderate-risk' option: establish a U.S. entity, indirectly controlled by Binance, which would become the focus of U.S. law enforcement and regulatory authorities and allow Biance to continue to profit from the U.S. market." [Dkt. #31.3, p. 10, ¶ 33 (Attachment A, "Statement of Facts")]. The federal plea agreement prohibits Defendants from making public statements that contradict it, even statements made by attorneys in litigation. [Dkt. #31.3, pp. 29-30, ¶ 46 ("Plea Agreement")]. BAM argues that a court in California concluded that it is not an alter ego of Binance – citing a case that was decided 3 years before Binance and CZ entered guilty pleas. These guilty pleas alter the analysis entirely.

The Binance plea provides that Binance operated throughout the United States and generated "at least $898,618,825" from U.S. customers doing business with Iranian nationals. [Dkt. #31.3, p. 7, ¶ 23 (Attachment A, "Statement of Facts")]. Given the Defendants' admissions in their plea, as well as litigation against

Defendants by the Securities Exchange Commission ("SEC"), Plaintiff's claim to personal jurisdiction is not "clearly frivolous." Where tokens that rose to over $30,000,000.00 were hacked from Plaintiff's wallet and traced to Binance, Plaintiff is likely to succeed on the merits of his claims.

## LEGAL ARGUMENT

### I. PLAINTIFF SUFFICIENTLY PLEADED PERSONAL JURISDICTION OVER THE DEFENDANTS.

Courts must resolve factual disputes in favor of the plaintiff, and jurisdictional facts are plausible if they allow a court to draw the reasonable inference that the defendant intended to target the forum. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### A. Plaintiff Sufficiently Pleaded Specific Jurisdiction Over Defendants Due to Their Contacts in the Forum.

CZ has repeatedly proclaimed that Binance "rejects having any physical headquarters in any geographic location." *Williams v. Binance*, 96 F.4th 129, 133 (2d Cir. 2024); (*see also* Compl. ¶ 10). However, Binance and CZ acknowledge that "[t]here are limited circumstances where jurisdiction over a defendant facing a RICO claim can be based on nationwide contacts, rather than contacts with the forum. This is permitted only if there is personal jurisdiction in the forum 'over at least one defendant' and the 'ends of justice' require the other defendants' presence in the forum." [Dkt. #31 at 7 n.2 (citing *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 120 (3d Cir. 2020))]. Plaintiff asks this Court turn to the recent decision of Judge

Amy Berman Jackson against these same Defendants in *SEC v. Binance Holdings Ltd.*, Civil Action 23-1599 (ABJ), 2024 U.S. Dist. LEXIS 114924 (D.D.C. June 28, 2024). Similar to RICO, for cases brought under the Securities Act of 1933, 15 U.S.C. § 77a, and the Securities Exchange Act of 1934, 18 U.S.C. § 78a, the relevant "forum" is the United States. *Id.* at *83 (citing *SEC v. e-Smart Techs, Inc.*, 926 F. Supp. 2d 231, 236 (D.D.C. 2013)). On similar facts alleged in the complaint, Judge Berman Jackson found that the SEC set forth sufficient facts to allege that CZ had "meaningful contacts, ties, or relations[]" with the United States:

> In short, the complaint amasses considerable detail to show that Zhao effectively operated as the CEO of BAM Trading. . . . The SEC alleges that Zhao ran the day-to-day operations of BAM Trading, . . . a U.S.-based company created to provide trading services for users in the United States of the crypto assets at issue in this case. . . . And it claims that Zhao personally directed Binance to instruct customers to circumvent the Binance.com platform's "geographic blocking of U.S.-based IP addresses" and Know Your Customer restrictions.

*Id.* at *88-89. Judge Berman Jackson held that the SEC set forth sufficient facts to find that CZ "purposefully avail[ed himself] of the privilege of conducting [business] activities within" the United States with respect to both Binance and Bam Trading, [*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)], and that exercising jurisdiction over him would not offend due process." *Id.* at *90 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Judge Berman Jackson acknowledged that "in November 2023, Zhao admitted in a plea agreement in a criminal matter in the U.S. District Court for the Western District of Washington that 'Binance was a

foreign-located [money services business] *that did business in the United States*.'" *Id.* at *90, n. 26 (emphasis added); [*see* Dkt. #31-3].

Similar to the SEC's complaint in *Binance Holdings Ltd.*, the instant complaint, which is rife with footnote citations to credible evidence, alleges that Binance created BAM to draw the scrutiny of U.S. regulators away from the global exchange; this was confirmed in the Biance plea. [Dkt. #31.3, p. 10, ¶ 33 (Attachment A, "Statement of Facts")]; (Compl. ¶¶ 22-23.) Binance transferred more than $400 million from BAM to a trading firm managed by CZ, some of which was later sent to the bank account of another entity controlled by CZ. (Compl. ¶ 25.) CZ "micromanages" all aspects of Binance's and BAM's operations. (Compl. ¶¶ 31-32.) After launching BAM Trading, CZ continued to control both its high-level and the day-to-day operations. (Compl. ¶ 32.) CZ hired and controlled the company's first CEO. (Compl. ¶ 35.) CZ and Binance engaged in widespread covert efforts to permit U.S. customers to continue to trade on the Binance platform. (Compl. ¶¶ 45-50.) CZ directed Binance to implement a plan to encourage customers to circumvent Binance's geographic blocking of U.S.-based IP addresses by using a VPN service to conceal their U.S. location and avoid KYC procedures. (Compl. ¶¶ 50, 66.) CZ was responsible for personally approving BAM Trading employees obtaining certain real-time trading data for the Binance.US Platform, "at least through much of 2021." (Compl. ¶¶ 36-37.) CZ was responsible, at least through January 30, 2020, for

approving "all BAM Trading expenditures exceeding $30,000," and BAM sought his and Binance's approval for routine expenses. (Compl. ¶ 32.)

The Second Circuit rejected Defendants' arguments that Binance users' transactions of cryptocurrency were impermissibly extraterritorial under the Securities Act of 1933 and the "Blue Sky" securities laws of various states. *Williams*, 96 F.4th 129. The Second Circuit found that "Binance now has a substantial presence, with servers, employees, and customers throughout [the United States]." *Id.* at 133. Similar to the instant complaint, the *Williams* plaintiffs alleged:

> Binance directly targeted the U.S. market with advertising and customer support specifically aimed at U.S. users. Although Binance ostensibly cut off access to its platform for U.S. users in September 2019, Plaintiffs allege that it simultaneously advised U.S.-based purchasers how to circumvent its own restrictions using virtual private networks (VPNs), after which several of the Plaintiffs continued trading on Binance from the United States. According to Plaintiffs, in 2019, Zhao tweeted that the use of VPNs is "a necessity, not optional" in order to trade tokens on Binance.

*Id.* at 135. The *Williams* Court held the transactions were domestic, which is "particularly difficult when a transaction takes place over an exchange that claims to have no physical location in any geographic jurisdiction and not be subject to the oversight of any country's regulatory authority," after finding that the plaintiffs transacted on Binance from the United States. *Id.* at 136-37. Plaintiff's cryptocurrency was stolen from in New Jersey from a hacker using a Binance account who should not have been able to trade in the United States. Plaintiff has

pleaded minimum nationwide contacts to have specific jurisdiction over all 3 Defendants over Plaintiff's RICO claim, *Laurel Gardens, LLC,* 948 F.3d at 120.

**B. Plaintiff has Sufficiently Pleaded Alter Ego.**

The Third Circuit applies an alter ego theory to exercise jurisdiction when "a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise controls the subsidiary," and, if so, "then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018). This alter ego theory derives from the veil-piercing doctrine. *FDASmart, Inc. v. Dishman Pharm. & Chemicals Ltd.*, 448 N.J. Super. 195, 203-04 (App. Div. 2016)). In deciding whether a subsidiary was "merely a conduit for the parent," courts consider various factors — for instance, the "failure to observe corporate formalities, gross undercapitalization, absence of corporate records, siphoning of funds of the corporation, and the corporation's existence as a facade for the operations of the dominant stockholder." *Napoli v. First Choice Loan Servs. Inc.*, Civ. No. 19-7265, 2020 U.S. Dist. LEXIS 722, at *13 (D.N.J. Jan. 3, 2020). Factors include "who the subsidiary does business with other than the parent;" "the day-to-day involvement of the parent's directors, officers and personnel with the subsidiary"; and "the payment of the subsidiary's salaries and expenses by the parent." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004)).

Plaintiffs have sufficiently pleaded that BAM, which is licensed to do business in New Jersey, and Binance and CZ, through their alter ego BAM, have availed themselves of the privilege of doing business in New Jersey. Defendants rely heavily on *Daimler AG v. Bauman*, 571 U.S. 117 (2014). "Indeed, multiple courts have interpreted *Daimler* as having voided [an] agency approach for imputing contacts for the purpose of general jurisdiction." *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 438 (D.N.J. 2021) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). "The door remains open, however, as to specific jurisdiction. *Daimler* acknowledged that corporate relationships 'may be relevant to the existence of specific jurisdiction.'" *Rickman*, 538 F. Supp. 3d at 438 (citing *Daimler*, 571 U.S. at 135 n.13). Corporate relationships can be used to show that the parent purposefully availed itself of the subsidiary's forum. *Id.*; *see also Cunningham v. Cap. Advance Sols., LLC*, Civ. No. 17-13050, 2018 U.S. Dist. LEXIS 197590, at *14-18 (D.N.J. Nov. 20, 2018). Plaintiff adequately pleaded that BAM purposefully availed itself of the New Jersey market by becoming licensed to do business in New Jersey (BAM was served in this matter via its New Jersey registered agent), and Defendants Binance and CZ purposefully availed themselves of the nationwide market before Plaintiff's cryptocurrency wallet was hacked, as demonstrated by these defendants' guilty plea: "As a result of [Binance's] decision not to implement comprehensive controls blocking illegal transactions between

sanctioned users and U.S. users, Defendant willfully caused transactions between U.S. users and users in comprehensively sanctioned jurisdictions in violation of U.S. law. Specifically, between in or about January 2018 through May 2022, [Binance] caused at least 1.1 million transactions in violation of IEEPA between users it had reason to believe were U.S. persons and persons it had reason to believe resided in Iran, with an aggregate transaction value of at least $898,618,825." [Dkt. #31.3, p. 7, ¶ 23 (Attachment A, "Statement of Facts")]. "According to Binance's own transaction data, U.S. users conducted trillions of dollars of transactions on the platform between August 2017 and October 2022 – transactions that generated approximately $1,612,031,763 in profit for Binance." [Dkt. #31.3, p. 15, ¶ 48 (Attachment A, "Statement of Facts")]. We know an illegal transaction occurred in New Jersey, where Plaintiff has shown through his expert tracing report that his Coinbase wallet tokens ended up with Binance in May 2021. [*See* Dec. of Counsel, "Exhibit 1."] We also know that BAM's very conduct of business in the State of New Jersey was also willfully designed by Defendants as a ruse to distract U.S. authorities from the real issue – that Binance was still servicing U.S. customers without obeying U.S. law.

The Complaint sufficiently pleads facts, which Defendants admit to in their plea [Dkt. #31.3], that Defendant BAM was established as an alter ego (an illegal front) to Binance and was controlled by CZ and Binance to illegally permit U.S.

residents to trade on Binance. In its guilty plea, Binance admits that BAM is merely a front. Binance admits: "[A] consultant . . . provided guidance for [Binance] to pursue the 'moderate-risk' option: establish an U.S. entity, indirectly controlled by Binance, which would become the focus of U.S. law enforcement and regulatory authorities and allow Biance to continue to profit from the U.S. market." [Dkt. #31.3, p. 10, ¶ 33 (Attachment A, "Statement of Facts")]. Interestingly, the federal plea agreement also prohibits Defendants from making public statements that contradict it, even through attorneys in the course of litigation. [Dkt. #31.3, pp. 29-30, ¶ 33 ("Plea Agreement")]. "Although Defendant did not adopt the consultant's recommendations as offered, Defendant's senior leaders decided to create and launch a U.S.-based exchange that would register with FinCEN and conduct KYC on all users. Defendant's 'retail' users would, gradually, be directed to move from Binance.com to the new U.S.-based exchange. [Binance] would develop and execute various strategies to allow some high-volume VIP U.S. users to continue to access Binance.com." [Dkt. #31.3, p. 10, ¶ 33] (Attachment A, "Statement of Facts")]. Dkt. #31.3, p. 10, ¶ 34 (Attachment A, "Statement of Facts")]. This scheme to use BAM as a front is exactly what Binance's "consultant" advised. Defendants make numerous public statements contrary to the plea in their papers to this Court (in violation of the plea), to which this Court should afford limited credibility.

Defendants have attempted to create a factual dispute regarding the basis for personal jurisdiction by including the guilty plea in their papers, which supports Plaintiff's allegations that Defendants are alter egos, or at least were when Plaintiff's cryptocurrency was stolen, [Dkt. #31.3] and a declaration from a BAM officer that BAM is a separate entity, even though this officer started working for BAM after Plaintiff's cryptocurrency was stolen in May 2021 [Dkt. #32.1]. At a minimum, Plaintiff is entitled to jurisdictional discovery." *Shuker*, 885 F.3d at 781.

Alternatively, Plaintiff has sufficiently pleaded that BAM, which is licensed to do business in New Jersey (and has a registered agent for the service of process per the affidavits of service), has an agency relationship with Binance, which would give BAM apparent authority to accept service on Binance's and CZ's behalf. Indeed, BAM's registered agent in New Jersey did accept service on behalf of Binance, and BAM's Miami headquarters accepted service on behalf of CZ. [Dkt. # 5, 7, 11, 12]. Apparent authority may be a way of creating an agency relationship. *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1439-40 (3rd Cir. 1994). Under the doctrine, liability is imposed "not as the result of the reality of a contractual relationship but rather because of the actions of a principal or an employer in somehow misleading the public into believing that the relationship or the authority exists." *Arthur v. St. Peters Hosp.*, 405 A.2d 443, 446 (Law Div.1979). Thus, while "[the] doctrine generally presupposes the existence of

a principal-agent relationship ... it is not necessary to the application of the doctrine." *Shadel v. Shell Oil Co.,* 195 N.J. Super. 311, 478 A.2d 1262, 1264 (Law Div.1984); *see also Sears Mortgage Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993) ("[e]ven if a person is not an 'actual agent,' he or she may be an agent by virtue of apparent authority based on manifestations of that authority by the principal.") (citing *C.B. Snyder Realty Co. v. National Newark Banking Co.*, 14 N.J. 146 (1953)). The guilty plea is rife with manifestations of authority, where it is now clear that BAM is a front for Binance to continue to violate U.S. law, with CZ at BAM's helm. [Dkt. #31.3, p. 10, ¶ 33 (Attachment A, "Statement of Facts")]. Alternatively, Defects in service can be cured by the Hague Convention. If service of CZ or Binance needs to comply with the time-consuming and cumbersome Hague Convention, dismissal without prejudice is appropriate. *See In re Metformin Mktg. & Sales Practice Litig.*, 2022 U.S. Dist. LEXIS 59804, at *54 (D.N.J. Mar. 30, 2022).

## II. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

Defendants' pleadings and the plea to operating a money laundering business show that Plaintiff has "a reasonable chance, or probability of winning." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citation omitted).

### A. Conversion and Aiding and Abetting Conversion

Plaintiff has pleaded that Plaintiff owned the stolen cryptocurrency at the time of the hack. In the plea, Defendants allowed the laundered cryptocurrency to be

deposited in Binance accounts and aided and abetted the conversion by failing to implement Know Your Customer (KYC) and Anti-Money Laundering (AML) protocols (Complaint ¶¶ 52-73, 78-81) and operating an unlicensed money transmitting business. [Dkt. #31-3.] "[I]t is essential that the conduct of the actor be in itself tortious." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc.*, 904 A.2d 775, 783 (App. Div. 2006). Binance and CZ admitted that BAM was "wholly owned by Zhao" and that Binance and Zhao "knowingly and willfully conspired (i) to operate an unlicensed money transmitter" and "caused millions of dollars of transactions between U.S. users and users in other comprehensively sanctioned jurisdictions." [Dkt. #31-3 at Attachment A, ¶¶ 5, 19, 80.] The "crux of conversion is wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456 (App. Div. 2009). New Jersey applies conversion to money. *Ellis*, 409 N.J. Super. at 454 (citing *Hirsch v. Phily*, 4 N.J. 408, 416 (1950)); *see also Kleiman v. Wright, 2018 U.S. Dist. LEXIS 246616,* *45 (S.D. Fla. Dec. 27, 2018) (holding that under Florida law, Bitcoin was money for the purposes of a conversion claim).

**B. Unjust Enrichment**

Plaintiff also pleaded that he conferred a benefit upon Defendants - transaction fees on the stolen cryptocurrency – which Defendants unjustly retained (Compl. ¶¶

102-105). *County of Essex v. First Union Nat. Bank*, 373 N.J. Super. 543, 549-50 (App. Div. 2004). Plaintiff's hacked account was with Coinbase and not Binance, but courts have recognized that unjust enrichment can arise outside the quasi-contractual setting. *Manning Eng'g, Inc. v Hudson County Park Comm'n*, 74 N.J. 113 (1977) (allowing for unjust enrichment in the presence of corruption).

**C. Fraud and RICO Violations**

Plaintiff also pleaded that CZ, Binance and BAM used the enterprise, the "Tai Chi" scheme, to fraudulently engage in a course of conduct and conspiracy to gain market share and generate revenues by enabling bad actors to launder stolen cryptocurrency through Defendants' platform in violation of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. (Compl. ¶¶ 23-24); *Cedric Kushner Prom'ns, Ltd. v. King*, 533 U.S. 158, 161 (2001). Defendants admitted same in their plea [Dkt. #31.3]. As reported by the DOJ:

> Binance turned a blind eye to its legal obligations in the pursuit of profit. . .. Changpeng Zhao made Binance, the company he founded and ran as CEO, into the largest cryptocurrency exchange in the world by targeting U.S. customers, but refused to comply with U.S. law, . . . As Binance's internal communications showed, Binance's compliance employees recognized that Binance did not have protocols to flag or report transactions for money laundering risks, which employees recognized would attract criminals to the exchange . . . Due in part to Binance's failure to implement an effective AML program, illicit actors used Binance's exchange in various ways, including conducting transactions for mixing services that obfuscated the source and ownership of cryptocurrency . . . exchange hacks, and various internet-related scams.

[*See* Dec. of Counsel, ¶ 2.]

But for the "Tai Chi" scheme to evade U.S. regulators, Plaintiff's wallet would not have been hacked. As the plea shows, Plaintiff has pleaded a civil RICO claim, and Plaintiff's RICO claim is likely to succeed on the merits. (Complaint ¶¶ 19-20, 40-51, 55-56, 64, 74-82). Plaintiff has pleaded that Defendants have sufficient nationwide contacts to be liable under RICO. *Laurel Gardens, LLC*, 948 F.3d at 120.

## III. PLAINTIFF RISKS IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF, AND THE BALANCE FAVORS PLAINTIFF.

Plaintiff pleaded that the value of his account rose to a high of over $30,000,000.00, and that Defendants have refused to assist Plaintiff in recovering his stolen cryptocurrency. (Compl. ¶¶ 84-85); *see also Ox Labs Inc. v. BitPay, Inc.*, 848 F. App'x 795, 796 (9th Cir. 2021) (holding that the cryptocurrency should be given the value at the time the defendant sold it). Due to the volatility of cryptocurrency, Plaintiff's losses may be difficult to ascertain. The Third Circuit has recognized that a preliminary injunction is appropriate when a plaintiff's injury is compensable by money damages where the amount of the loss is difficult to ascertain. *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1210 (D.N.J. 1992); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205-06 (3d Cir. 1990); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801-02 (3d Cir. 1989); *Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987); *United Steel-*

*workers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979). This Court should grant injunctive relief to stop any further fraud. Finally, enjoining Defendants from allowing the trades of Plaintiff's stolen cryptocurrency with individuals in comprehensively sanctioned countries, such as Iran, is surely in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiff's motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Date: September 20, 2024

/s/Robert A. Tandy
Robert A. Tandy, Esq.
Law Office of Robert A. Tandy, LLC
50 Tice Boulevard
Suite 250
Woodcliff Lake, NJ 07677
Phone: (201) 474-7103
Fax: (201) 474-7103
Email: rtandy@tandylaw.com
*Co-counsel for Plaintiff*

/s/Eric J. Warner
Law Office of Eric J. Warner, LLC
991 US Highway 22, Suite 200
Bridgewater, NJ 08807
Phone: (201) 403-5937
Fax: (877) 360-0508
Email: eric@ejwlawfirm.com
*Co-counsel for Plaintiff*