**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GONZALEZ, <br><br> Plaintiff, <br><br> v. <br><br> BAM TRADING SERVICES, INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-08521 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff David Gonzalez's ("Plaintiff") Motion for a Preliminary Injunction (the "Motion").[1] (ECF No. 2.) Specifically, Plaintiff seeks to prevent and enjoin Defendants BAM Trading Services, Inc. d/b/a Binance US ("BAM"), Binance Holdings LTD d/b/a Binance ("Binance"), and Changpeng Zhao ("Zhao") (collectively, "Named Defendants") and unknown "Hackers" identified as XYZ Corp., Inc. 1–100 and John Does 1–100[2] (collectively, "Defendants") from "transferring, trading, selling, or otherwise moving any and all assets, coins, monies, or other cryptocurrency" from a digital cryptocurrency account owned, maintained, and operated by the unknown "Hackers" (the "Alleged Hacker Account"). (ECF No. 2-1 at 1.)

---

[1] Plaintiff's application to the Court also requested a temporary restraining order ("TRO"). (ECF No. 2.) This Court denied Plaintiff's application for a TRO on August 19, 2024. (ECF No. 4.) Therefore, this Opinion concerns only the preliminary injunction application that remains.

[2] Named Defendants' briefings do not purport to speak for the "Hackers" named in this matter. (ECF Nos. 31, 32.) Because these parties have not appeared or been identified, this Opinion does not determine whether Plaintiff is entitled to a preliminary injunction against the Hackers.

Pursuant to the Court's Memorandum Order dated August 19, 2024 (ECF No. 4), and the Consent Order extending deadlines (ECF No. 24), Named Defendants filed oppositions to the Motion on September 13, 2024 (ECF Nos. 31, 32). On September 20, 2024, Plaintiff filed a reply to Named Defendants' oppositions. (ECF No. 33.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Plaintiff's application for a Preliminary Injunction is **DENIED**.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff is a New Jersey citizen who possesses an account on Coinbase (ECF No. 1 ¶ 7), a cryptocurrency exchange where users can obtain, store, and use various digital currencies (ECF No. 31 at 2; ECF No. 1 ¶ 11 (describing cryptocurrency exchanges generally)). Plaintiff alleges that on or about May 8, 2021, his Coinbase account contained large quantities of various cryptocurrencies, including "at least 41,881,332,772 units of Shiba Inu (SHIB), 90,934,964,476,560.50 units of Hokkaidu Inu (HOKK), 6,677,846,866,673.65 units of Kishu Inu (KISHU), 1,985,208,578.34 units of Akita Inu (AKITA), 1,382,788,310,243.34 units of FEG Token (FEG), 53,436.64 units of Hydro (HYDRO), 123.3706939 units of Paid Network, 578.2658609 units of DigiCol Token." (ECF No. 1 ¶ 7.)

Plaintiff alleges BAM is a "Delaware-organized corporation with its current headquarters and principal place of business in Miami, Florida." (*Id.* at ¶ 8.) Plaintiff further alleges BAM's holding company is "wholly owned by BAM Management U.S. Holdings Inc.," in which Zhao has an 81% stake. (*Id.*) Plaintiff describes Zhao as "the beneficial owner of a number of entities subordinate to or affiliated with Binance, in multiple jurisdictions" (ECF No. 1 ¶ 10), and "an

2

officer and director of BAM and Binance at all relevant times" (*id.* at ¶ 14). Zhao is a Canadian citizen who lives in Dubai and Paris. (*Id.*) Plaintiff asserts "General Jurisdiction is appropriate as to [Named Defendants.]" (*Id.* at ¶ 19.)

While Plaintiff acknowledges Binance is a foreign company registered and with its principal place of business in the Cayman Islands (*id.* at ¶ 9), he alleges Binance and BAM are alter egos of one another (*id.* at ¶¶ 21–41). Based on public reporting and court filings by the Commodity Futures Trading Commission ("CFTC") and Securities & Exchange Commission ("SEC"), Plaintiff alleges Binance created BAM in 2019 to serve the U.S. cryptocurrency market and draw regulatory scrutiny away from Binance itself. (*Id.* at ¶¶ 21–27.) Plaintiff cites from Binance's Terms of Use to allege they refer to BAM as a "fiat gateway" for Binance. (*Id.* at ¶ 28.) Plaintiff also cites from a complaint filed by the CFTC ("CFTC Complaint"), which alleges that Binance purposefully created a "maze of corporate entities . . . to obscure the ownership, control, and location of the Binance platform." (*Id.* at ¶ 29.) Plaintiff alleges Zhao manages all aspects of both Binance and BAM's operations, including small expenditures. (*Id.* at ¶¶ 31–33.) Per a complaint filed by the SEC ("SEC Complaint"), Binance was advised to take certain steps following BAM's launch to avoid the appearance that BAM and Binance were alter egos. (*Id.* at ¶ 34.) Plaintiff also draws on the SEC Complaint's allegations that Binance "held and controlled BAM data offshore" (*id.* at ¶ 36), and had authority over BAM's bank accounts, expenses, and cryptocurrency assets in BAM users' accounts (*id.* at ¶¶ 38–41).

In addition, Plaintiff alleges Binance targets the U.S. as its primary market, and both Binance and BAM "advertise to and solicit customers in the United States and New Jersey." (*Id.* at ¶¶ 43–44.) Plaintiff refers to allegations in the CFTC Complaint that around 16 percent of Binance's accounts were identified as belonging to U.S.-based customers in August 2020. (*Id.* at

3

¶ 44.) Plaintiff also alleges Binance encourages U.S.-based users to access Binance, which is not available in the U.S., through a V.P.N. with a non-U.S. IP address, including by promoting specific V.P.N. providers. (*Id.* at ¶¶ 45–51.) As a result, Plaintiff asserts "[t]he Court also has general personal jurisdiction over Binance because, as an alter ego of BAM, it would be inequitable under the circumstances to recognize Binance's existence as a separate entity." (*Id.* at ¶ 20.)

Much of Plaintiff's Complaint is devoted to allegations about Named Defendants' failure to take adequate steps to prevent money laundering and fraud on their platforms (*id.* at ¶¶ 55–75), including that "Binance does not require users to validate their identity information . . . . Accounts are therefore easily opened anonymously . . . by users [in New Jersey and elsewhere]" (*id.* at ¶ 62). With that background, Plaintiff alleges that on or about May 8, 2021, he discovered his Coinbase cryptocurrency account was hacked, and certain of his cryptocurrency assets "were improperly and unlawfully transferred out of Plaintiff's account to [the Alleged Hacker Account]." (*Id.* at ¶ 81.) Plaintiff allegedly traced the transfers from his Coinbase account through the blockchain to the Alleged Hacker Account; he noted "[a]ll the transfers of Plaintiff's cryptocurrency portfolio to Binance were within Binance's 2 BTC limit under which no form of identification was required to deposit cryptocurrency." (*Id.* at ¶¶ 82–83.) Plaintiff states he has demanded Defendants return his stolen cryptocurrency assets to him, but Binance has refused to do so. (*Id.* at ¶ 84.)

**B.     Procedural History**

On August 18, 2024, Plaintiff filed a Verified Complaint against Defendants, alleging the following four causes of action: "Conversion" (Count I); "Aiding and Abetting Conversion" (Count II); "Unjust Enrichment" (Count III); and "RICO Allegations" (Count IV) (ECF No. 1), and simultaneously filed an emergent application for a TRO and Preliminary Injunction (ECF No. 2). This Court denied Plaintiff's application for a TRO on August 19, 2024, and set a schedule for

Defendants to respond to the Motion and for Plaintiff to reply if he so chose. (ECF No. 4.) Following Plaintiff's attempted service of Named Defendants[3] (ECF Nos. 5–8, 10–12), the parties agreed to extend briefing deadlines for the Motion (ECF Nos. 17, 24). The Named Defendants filed oppositions to the Motion on September 13, 2024. (ECF Nos. 31, 32.) On September 20, 2024, Plaintiff filed a reply to Named Defendants' oppositions. (ECF No. 33.)

## II.   LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).

In order to obtain a temporary restraining order or preliminary injunction, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. Cty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

---

[3] As discussed further in this Opinion, Defendants Binance and Zhao contest the propriety of Plaintiff's service of process. On September 25, 2024, counsel for Plaintiff submitted a letter to the Court advising that Plaintiff had served Defendant Zhao and providing the return of service. (ECF Nos. 34–35.)

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210. A preliminary injunction also should not be issued where material issues of fact are in dispute. *Vita-Pure, Inc. v. Bhatia*, Civ. A. No. 2:14–7831, 2015 WL 1496396, at * 3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, Civ. A. No. 14–04984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014).

### III.    DECISION

Plaintiff contends he satisfies the requirements for a preliminary injunction. He argues he is reasonably likely to prevail on the merits of his claims for conversion and aiding and abetting conversion, unjust enrichment, and fraud and civil RICO. (ECF No. 2-1 at 10–18.) Plaintiff also asserts that, because his allegedly stolen funds may be transferred out of the Alleged Hacker Account in an untraceable manner, he will suffer irreparable harm if Defendants are not enjoined. (*Id.* at 18–23.) Conversely, he argues a preliminary injunction will not further harm Defendants because they allegedly possess assets that belong to him. (*Id.* at 24–25.) Plaintiff argues he will be

entitled to a damages judgment if he prevails, so there would be no harm in freezing the assets at issue, and any harm to Defendants would be self-inflicted by their failure to prevent the alleged theft of his assets. (*Id.*) Finally, Plaintiff contends the public interest in preventing consumer fraud and deception would be served by granting the Motion. (*Id.* at 25–26.)

Named Defendants oppose the Motion on several grounds. First, Binance, Zhao, and BAM all contend this Court lacks personal jurisdiction over them. (ECF No. 31 at 4–7; ECF No. 32 at 9–10.) Named Defendants argue Plaintiff has failed to allege facts sufficient to establish general or specific personal jurisdiction by the Court over Named Defendants. (*Id.*) In addition, Zhao and Binance assert that, even if personal jurisdiction over them exists, Plaintiff did not properly serve them with process, thereby preventing the Court from exercising jurisdiction over Zhao and Binance at this time. (ECF No. 31 at 8–9.)

Second, Named Defendants argue Plaintiff failed to make the required showing to obtain a preliminary injunction. Named Defendants contend Plaintiff has not demonstrated he faces a risk of irreparable harm absent an injunction, the grounds on which this Court denied Plaintiff's application for a TRO on August 19, 2024. (*Id.* at 11–13; ECF No. 32 at 12–19.) Named Defendants also assert Plaintiff did not demonstrate he is likely to succeed on the merits of any of his claims. (ECF No. 31 at 13–19; ECF No. 32 at 19–31.) Additionally, Named Defendants refute that the balance of the equities and the public interest favor Plaintiff. (ECF No. 31 at 19; ECF No. 32 at 31–33.) BAM separately argues an injunction cannot lawfully issue against it because it has no access to or control over the Alleged Hacker Account, and it therefore lacks the ability to comply with an injunctive order with respect to the assets it contains. (ECF No. 32 at 10–12.)

Plaintiff responds he sufficiently pleaded personal jurisdiction over the Named Defendants in the Complaint. (ECF No. 33 at 2–11.) Plaintiff also reiterates his assertions from the Motion

7

that he demonstrated all the elements courts in this Circuit must find to grant a preliminary injunction. (*Id.* at 11–15.)

The Court first addresses Named Defendants' arguments regarding personal jurisdiction.

### A. Personal Jurisdiction

Named Defendants contend Plaintiff has established neither general nor specific personal jurisdiction over them. Because the Complaint alleges Defendant Zhao is a Canadian citizen who has lived in Dubai and Paris, Zhao argues he is not domiciled in New Jersey for the purposes of general personal jurisdiction. (ECF No. 31 at 5.) Defendants BAM and Binance assert Plaintiff's pleadings as to general jurisdiction do not demonstrate sufficient minimum contacts with the forum "as to render [them] essentially at home," as required by the Supreme Court for general jurisdiction over corporate entities (ECF No. 31 at 5 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal citations and quotations omitted))), because BAM is incorporated in Delaware with a principal place of business in Miami, and Binance is registered and has its principal place of business in the Cayman Islands (ECF No. 31 at 5–6; ECF No. 32 at 9–10). Binance also contends Plaintiff's allegation that Binance is the alter ego of BAM would not establish general jurisdiction over Binance, even if true, because BAM is not at home in New Jersey, despite having a registered agent in the forum. (ECF No. 31 at 6.)

Named Defendants point out Plaintiff did not allege the Court has specific personal jurisdiction over them in the Complaint, but they nonetheless contend it does not exist. (ECF No. 31 at 6–7; ECF No. 32 at 9 n.4.) They assert Plaintiff does not allege any Named Defendant purposefully directed activities at New Jersey, and Plaintiff does not allege his injury stemmed from activities in New Jersey. (*Id.*)

8

In his reply, Plaintiff recharacterizes his Complaint allegations as pleading specific jurisdiction based on Named Defendants' contacts in New Jersey. (ECF No. 33 at 2.) Plaintiff argues that, when a defendant faces a RICO claim, specific jurisdiction may be found based on nationwide contacts, rather than contacts with the forum state.[4] (*Id.* at 2–6.) In support, Plaintiff points to recent decisions in actions against Named Defendants in the District Court of the District of Columbia and the Second Circuit under the Securities Act of 1933 and the Securities Exchange Act of 1934—both of which permit a nationwide "forum" for personal jurisdiction—where those courts found personal jurisdiction existed based on Binance and Zhao's nationwide activities. (*Id.*) Additionally, Plaintiff refers to a plea agreement between Binance and the Department of Justice (an exhibit to Binance and Zhao's opposition to the Motion (ECF No. 31-3) and incorporated into the Complaint[5]), which Plaintiff contends speaks to a covert plan by Binance and Zhao "to permit U.S. customers to continue to trade on the Binance platform" while distracting U.S. regulators with BAM. (ECF No. 33 at 4.) Plaintiff also asserts he pleaded specific jurisdiction as to BAM because it is licensed to do business in New Jersey and has a registered agent there. (*Id.* at 7, 10.)

Plaintiff reasserts BAM is an alter ego of Binance. Again characterizing the Complaint as alleging specific personal jurisdiction, Plaintiff argues case law following *Daimler AG* allows the use of "[c]orporate relationships . . . to show that the parent purposefully availed itself of the

---

[4] Plaintiff relies on the rule from *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 120 (3d Cir. 2020), where the Third Circuit determined 18 U.S.C. § 1965(b) (the federal RICO statute) provides for personal jurisdiction over a defendant based on nationwide contacts, if (1) at least one co-defendant meets "the traditional contacts test" for personal jurisdiction, and (2) jurisdiction over the defendant in question would satisfy the "ends of justice." *Id.* (internal citations omitted).

[5] The Third Circuit allows a court to consider documents outside the pleadings that are "explicitly relied upon in the complaint." *In Re Carton*, No. 20-19781, 2023 WL 8057870, at *3 (Bankr. D.N.J. Nov. 20, 2023) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Because Plaintiff refers to this plea agreement in his RICO count allegations, (ECF No. 1 ¶ 142), the Court may properly consider it at this stage of the litigation.

subsidiary's forum" when establishing specific jurisdiction. (ECF No. 33 at 7.) Plaintiff contends he adequately pleaded BAM was established as "an illegal front" for Binance "to illegally permit U.S. residents to trade on Binance." (*Id.* at 8–9.) And in response to Binance and Zhao's claims of procedural defects with service, Plaintiff asserts "BAM, which is licensed to do business in New Jersey (and has a registered agent for the service of process per the affidavits of service), has an agency relationship with Binance, which would give BAM apparent authority to accept service on Binance's and [Zhao's] behalf." (*Id.* at 10.)

1. **Legal Standard**

The existence of personal jurisdiction, being a necessary element to a federal court's authority, is a threshold issue a court should address before turning to the merits of a preliminary injunction application. *See In re Diet Drugs*, 282 F.3d 220, 229 (3d Cir. 2002) ("Because there exists a strong policy to conserve judicial time and resources, we have held that preliminary matters such as . . . personal jurisdiction . . . should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." (internal citations and quotations omitted)); *Zangara v. Nat'l Bd. of Med. Examiners*, Civ. A. No. 22-1559, 2023 WL 2868223, at *4 (D.N.J. Apr. 6, 2023) (addressing personal jurisdiction on application for preliminary injunction and finding plaintiff did not plead sufficient facts to establish personal jurisdiction); *New Earthshell Corp. v. Lycos Internet Ltd.*, Civ. A. No. 14-7665, 2015 WL 170564, at *3 (D.N.J. Jan. 12, 2015) (same).

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). "Where the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous

10

and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 554 (3d Cir. 1993) (internal citations omitted). The plaintiff may rely on "affidavits or other competent evidence [to prove] that jurisdiction is proper." *Smith v. Zimmer US, Inc.*, Civ. A. No. 19-06863, 2020 WL 487029, at *1 (D.N.J. Jan. 29, 2020) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). In determining whether it has personal jurisdiction, the Court is not bound by the pleadings, *see Smith*, 2020 WL 487029, at *1, and, to the extent they are material, will include relevant allegations pertaining to jurisdiction in its summary of the facts, while construing all disputed facts in favor of the plaintiff, *see Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent allowed under the Fourteenth Amendment of the United States Constitution. N.J. Ct. R. 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG*, 571 U.S. at 127. General jurisdiction requires continuous

11

and systematic contacts and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 317. While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Ops.*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*." (emphasis added)). "It may be that whatever special rule exists permitting 'continuous and systematic' contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610 n.1 (1990) (citations omitted).

      Specific jurisdiction, however, may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted). More precisely, specific jurisdiction requires: "(1) the defendant purposefully directed its activities at the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquisition, LLC v. Multi-Media, LLC*, Civ. A. No. 14-01661, 2015 WL 5310203, at

12

\*12 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum" (citation omitted)).

A court's exercise of personal jurisdiction "requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *see also O'Connor*, 496 F.3d at 316–23 (discussing the three-step process to determine personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007). Rather, "[j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Id*. (quoting *World-Wide Volkswagen*, 444 U.S. at

13

297–98). Indeed, the three-part inquiry is meant to ensure that an out-of-state defendant will not be haled into court based on "random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person[.]" *Croat v. Mission Fine Wines, Inc.*, Civ. A. No. 19-17786, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (quoting *Stevens v. Welch*, Civ. A. No. 10-03928, 2011 WL 541808, at *3 (D.N.J. Feb. 7, 2011)). The plaintiff "bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court *in personam* jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (alterations in original) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

### 2. Application

In his Complaint, Plaintiff asserts this Court has general jurisdiction over the Named Defendants. (ECF No. 1 ¶ 19.) But Plaintiff does not allege any Named Defendant had "continuous and systematic" contacts with New Jersey. *Goodyear Dunlop Tires Ops.*, 564 U.S. at 924. Plaintiff describes BAM as a "Delaware-organized corporation with its current headquarters and principal place of business in Miami, Florida," and Binance as a foreign company registered and with its principal place of business in the Cayman Islands. (ECF No. 1 ¶¶ 8, 9.) Plaintiff alleges Zhao is a Canadian citizen with residences in Dubai and Paris. (*Id.* at ¶ 14.) None of these allegations constitute systematic contacts with New Jersey that would support general jurisdiction. *See Goodyear Dunlop Tires Ops.*, 564 U.S. at 924.

Plaintiff's sole allegation that might support finding general jurisdiction for BAM is that it is licensed to do business and has a registered agent in New Jersey.[6] (ECF No. 33 at 7.) Putting

---

[6] In his briefing, Plaintiff characterizes these facts as supporting specific jurisdiction, but courts generally view corporate registration as a means of consenting to general personal jurisdiction. *See, e.g.*, *Bane v. Netlink, Inc.*, 925 F.2d 637, 640–41 (3d Cir. 1991) (holding Pennsylvania statute explicitly listing "qualification as a foreign corporation" as a basis for personal jurisdiction over corporate defendants established consent to general personal jurisdiction).

14

aside that Plaintiff does not expressly allege the existence of this business license and registered agent in the Complaint (addressed *infra*), most courts in this District have found corporate registration with the state of New Jersey does not constitute consent to personal jurisdiction, based on the state's corporate registration statute, N.J. Stat. Ann. 14A:1–1, *et seq. See, e.g.*, *Horowitz v. AT&T Inc.*, Civ. A. No. 3:17-4827, 2018 WL 1942525, at *12 (D.N.J. Apr. 25, 2018) ("Notably, the New Jersey Statute does not contain any express language to put a corporation on notice that by registering to do business in New Jersey, it is also consenting to personal jurisdiction in the state."); *Simplot India LLC v. Himalaya Food Int'l Ltd.*, Civ. A. No. 23-1612, 2024 WL 1136791, at *10 (D.N.J. Mar. 15, 2024) (collecting cases agreeing New Jersey's corporate registration and registered agent statutes "do not explicitly provide that registration constitutes consent to general personal jurisdiction" and finding Supreme Court's recent decision on personal jurisdiction by consent, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023), does not alter this analysis). BAM's corporate registration and designation of an agent in New Jersey therefore do not provide sufficient basis for personal jurisdiction.

As Named Defendants point out, Plaintiff did not explicitly allege specific jurisdiction in the Complaint, raising it only in reply to Named Defendants' opposition. (ECF No. 31 at 6–7; ECF No. 32 at 9 n.4; ECF No. 33 at 2.) While "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal citations omitted); *accord Tannenbaum v. ReFocus Eye Health of Cent. Connecticut, P.C.*, Civ. A. No. 2:23–03033, 2024 WL 706795, at *4 n.8 (D.N.J. Feb. 21, 2024) (noting plaintiff's motion to dismiss opposition, which also requests a preliminary injunction, cannot amend his complaint), Third Circuit precedent permits the court to look outside the four corners of a complaint in assessing personal jurisdiction, *see Commw. of Pa.*

15

*ex rel. Zimmerman*, 836 F.2d at 181; *Smith*, 2020 WL 487029, at *1. Nonetheless, Plaintiff's "legal theories set forth in [his] brief are helpful only to the extent they find [factual] support" in the Complaint or other evidence acceptable in determining jurisdiction. *Commw. of Pa. ex rel. Zimmerman*, 836 F.2d at 181; *Carteret Sav. Bank*, 954 F.2d at 142 n.1 ("Of course, by accepting a plaintiff's facts as true . . . , a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute.").

Outside of BAM's corporate registration and agent in New Jersey, Plaintiff's only allegation related to activities in New Jersey is that he discovered, around May 8, 2021, his Coinbase account had been hacked and the contents transferred to a Binance account. (ECF No. 1 at ¶¶ 81–83.) However, these allegations concern Plaintiff's "unilateral activity," rather than that of any Named Defendant, and do not support specific jurisdiction. *Croat,* 2020 WL 1921955, at *4; *see also Wag Acquisition, LLC*, 2015 WL 5310203, at *12; *Lebel*, 558 A.2d at 1255.

For his theories of specific jurisdiction over Binance and Zhao, Plaintiff relies entirely on the presumption that the Court has personal jurisdiction over BAM. (ECF No. 33 at 7; ECF No. 1 at ¶ 20.) Using this argument, he asserts the Court has jurisdiction over both Binance and Zhao via the *Laurel Gardens* test based on their contacts with a U.S.-wide forum, 948 F.3d at 120, and over Binance because BAM is its alter ego, (ECF No. 33 at 7); *see Shuker*, 885 F.3d at 781 ("[I]f a subsidiary is merely the agent of a parent corporation . . . or if the parent corporation otherwise "controls" the subsidiary, . . . then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." (internal citations omitted)); *Simplot India*, 2024 WL 1136791, at *6 (explaining proving alter ego is "a 'notoriously difficult' burden to meet" (quoting *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018))). Both theories therefore hinge on finding BAM subject to the Court's jurisdiction. The

Court is not persuaded by Plaintiff's theories on how the Court may exercise personal jurisdiction over BAM. It is therefore unnecessary to examine whether Binance and Zhao satisfy the *Laurel Gardens* or alter ego tests because, as a threshold matter, both require the presence of another entity over which the Court has personal jurisdiction.[7] *See Laurel Gardens*, 948 F.3d at 120; *Shuker*, 948 F.3d at 120; *Simplot India*, 2024 WL 1136791, at *6.

Because the Court is not satisfied it has personal jurisdiction over Named Defendants,[8] it cannot issue a preliminary injunction. *See New Earthshell Corp.*, 2015 WL 170564, at *5; *Zangara*, 2023 WL 2868223, at *6. The Court therefore does not address the parties' arguments as to the merits of a preliminary injunction.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction is **DENIED**. An appropriate order follows.

Date: October 28, 2024

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

---

[7] Because this Court cannot exercise personal jurisdiction over Binance and Zhao, the Court need not address those Defendants' arguments about the propriety of service of process.

[8] In the alternative, Plaintiff requests jurisdictional discovery into his alter ego theory. (ECF No. 33 at 10.) But it is not clear how further discovery into the connections between Binance and BAM would establish the requisite contacts between BAM and the forum state for personal jurisdiction over BAM, an essential prerequisite for his alter ego theory. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (holding plaintiff must "presen[t] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state'" to merit jurisdictional discovery (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (alterations in original))). Consequently, the Court does not find jurisdictional discovery is necessary to determine whether personal jurisdiction exists over Binance via its ties to BAM.